**J.H. WESTERMAN COMPANY, Appellant,**

v.

**FIREMAN'S FUND INSURANCE CO., et al., Appellee.**

No. 84–501.

District of Columbia Court of Appeals.
Argued June 25, 1985.
Decided Oct. 4, 1985.

---

William J. Carter, Washington, D.C., with whom Lawrence E. Carr, Jr., Washington, D.C., was on briefs, for appellant.

Thomas H. McGrail, Washington, D.C., for appellee Texas Instruments, Inc.

James W. Greene, Washington, D.C., with whom Thomas Wochok, Stephen O. Hessler, and Lawrence Singer, Washington, D.C., were on the brief, for remaining appellees.

Before NEWMAN, FERREN and BELSON, Associate Judges.

BELSON, Associate Judge:

J.H. Westerman Company, a heating system repair firm, appeals from the judgments entered against it in four consolidated civil actions arising out of a fire caused by a heating system it serviced. Westerman's principal contention on appeal is that the trial court erroneously afforded the protection of a statute of repose, D.C.Code § 12–310 (1981), to Texas Instruments, Inc. (TI), the manufacturer of a component of the heating system Westerman serviced, against which Westerman had filed a third-party complaint. We affirm.

The insurers and tenants of commercial property at 1219 Wisconsin Avenue, N.W., instituted suits against appellant Westerman based on negligence and breach of warranty for injuries arising out of the fire. Westerman filed a third-party complaint against, *inter alia*, Texas Instruments, alleging that it was entitled to contribution or indemnification by reason of TI's alleged negligence or strict liability in connection with its manufacture of a component of the heating system, the "Klixon switch."

The fire occurred on the second floor of 1219 Wisconsin Avenue, N.W. at approximately 7:15 a.m., on January 4, 1980. Appellee, Uniphoto, as lessee, occupied part of the second floor, and sublet other portions to two small businesses. An electrical heating system, installed by a previous owner over 10 years before the fire, provided heat for the second floor. The trial court found that the fire originated in that heating system.

Westerman's employee, Timothy Evans, had performed repair work involving the fan and heating elements of that system on December 26 and 27, 1979. The system consisted of a heating unit within a metal duct that was attached above the false ceiling of the second floor. The heating unit included two electric resistance heating elements and a fan that circulated the heat through the ducts. A safety device—a "Klixon switch"—was incorporated into each heating element at the time of construction. The purpose of the Klixon switch was to terminate the power supply to the heating element if its temperature reached 170 °.

Thereafter, the tenants noticed nothing unusual about the operation of the heating system until the morning of January 3, 1980. On that date, the tenants saw smoke emanating from the vents of the heating system, and smelled something burning. They turned off the heat and requested

assistance from Westerman. In response, Maxwell Vance, another Westerman repairman, inspected the heating system. He activated the heating units, and found that the fan was working slowly. He also smelled the odor of something burning. Vance determined that excessive wear to the fan belt was preventing the fan from forcing enough air over the heating elements. He tightened the fan belt. He also recommended to the tenants the installation of a new fan belt and a "sail switch" safety mechanism. He did not check the wiring circuitry work of Evans, nor did he test the Klixon switches to determine if they operated properly.

Vance advised the tenants that until all repairs were authorized and completed, the unit's thermostat should be kept at a low temperature. He stated that it would not be necessary, however, to cut off all power to the unit.

On the morning of January 4, 1980, at approximately 7:15 a.m., a tenant noticed smoke coming from the heating vent. The consolidated lawsuits sought damages for property destroyed by the ensuing fire.

After a bench trial, the court concluded that the negligence of Westerman's employees was the proximate cause of the fire. The court found that Evans had improperly connected the system's fan to the second heating element rather than the first. Since the second element operated only when the first heating element did not produce enough heat, the fan often was not activated. Therefore, the first heating element generated heat which was not dispersed by the fan, causing the rafters above that element to ignite. The trial court also found Vance negligent in tightening the excessively worn fan belt—thus causing it to break, in failing to check the operation of the Klixon switches, and in failing to direct that all power to the heating system be cut off until the repairs were completed. In addition, the court determined that the failure of the Klixon switches to operate as designed was a "contributing" cause in the sense that, had they operated, the power to the heating units would have terminated at 170°—a level of temperature inadequate to ignite the rafters.

## II

At the start of trial, the trial judge granted TI's motion to dismiss Westerman's third party claim against it as barred by D.C.Code § 12–310 (1981). That section bars any action for damages caused by defective or unsafe improvements to real property when the injury occurs later than 10 years from the date the improvement was substantially completed. We set it forth in full in the footnote.[1]

---

1. The statute provides:

Actions arising out of death or injury caused by defective or unsafe improvements to real property.

(a)(1) Except as provided in subsection (b), any action—
(A) to recover damages for—
(i) personal injury,
(ii) injury to real or personal property, or
(iii) wrongful death,
resulting from the defective or unsafe condition of an improvement to real property, and
(B) for contribution or indemnity which is brought as a result of such injury or death, shall be barred unless in the case where injury is the basis of such action, such injury occurs within the ten-year period beginning on the date the improvement was substantially completed, or in the case where death is the basis of such action, either such death or the injury resulting in such death occurs within such ten-year period.

(2) For purposes of this subsection, an improvement to real property shall be considered substantially completed when—
(A) it is first used, or
(B) it is first available for use after having been completed in accordance with the contract or agreement covering the improvement, including any agreed changes to the contract or agreement,
whichever occurs first.

(b) The limitation of actions prescribed in subsection (a) shall not apply to—
(1) any action based on a contract, express or implied, or
(2) any action brought against the person who, at the time the defective or unsafe condition of the improvement to real property caused injury or death, was the owner of or in

■ We agree with the trial judge that the heating system, including its component Klixon switches, was an "improvement to real property." The built-in heating system was an integral part of the building, without which the structure could not have been used for business. *See* 41 AM.JUR.2D *Improvements* § 1 (1968) (improvements include, *inter alia,* fixtures); 35 AM.JUR.2D *Fixtures* § 118 (1967) (built-in heating plant essential to comfortable enjoyment of premises ordinarily a fixture); *see e.g. Adair v. Koppers Co., Inc.,* 541 F.Supp. 1120, 1125 (N.D.Ohio 1982) (conveyor system), *aff'd,* 741 F.2d 111 (6th Cir. 1984); *Cudahy Company v. Ragnar Benson, Inc.,* 514 F.Supp. 1212, 1216 (D.Colo. 1981) (refrigerator system); *Mullis v. Southern Co. Services, Inc.,* 250 Ga. 90, 93, 296 S.E.2d 579, 583 (1982) (electric system); *Pacific Indemnity Co. v. Thompson-Yaeger, Inc.,* 260 N.W.2d 548, 554 (Minn. 1977) (furnace); *see also Brown v. Jersey Central Power & Light Co.,* 163 N.J.Super. 179, 194, 394 A.2d 397, 405 (dictum) (heating system), *cert. denied,* 79 N.J. 489, 401 A.2d 244 (1979). Furthermore, the Klixon switches are an integral part of the heating system. As the Supreme Court of Georgia observed:

> to artificially extract each component from an improvement to real property and view it in isolation would be an unrealistic and impractical method of determining what is an improvement to real property. Frequently, as in this case, an improvement to real property is going to consist of a complex system of components.

*Mullis,* 250 Ga. at 94, 296 S.E.2d at 584; *see also Cudahy,* 514 F.Supp. at 1216 (header cap and valve integral component of refrigeration system).

We turn now to our reasons for rejecting Westerman's argument that TI is not within the class of persons protected by § 12–310. *See e.g. Swanson Furniture Co. v. Advance Transformer Co.,* 105 Wis.2d 321,

actual possession or control of such real property.

327, 313 N.W.2d 840, 844 (1982) (manufacturer of improvement to real property not within statute).

Congress enacted § 12–310 in 1972 as a statute of repose. Pub.L. No. 92–579, 86 Stat. 1275. A statute of repose differs from an ordinary statute of limitations in that the specified time period begins to run not from the date on which a right of action accrues, but from another ascertainable date, in the case of this statute the date the improvement to real property was completed. *See generally* Annot., 93 A.L. R.3d 1242 (19—); Comment, *Limitation of Action Statutes for Architects and Builders—Blueprints for Non-action,* 18 *Cath. U.L.Rev.* 361 (1969) [hereinafter Comment, *Limitation of Action* ]; RESTATEMENT (SECOND) OF TORTS § 899 comment g (1977). Congress explained that the purpose of the statute of repose "is not to bar seasonable and timely actions. Rather, to require that justifiable controversies be brought while the evidence is still fresh and available." S.REP. NO. 1274, 92d Cong., 1st Sess. 2 (1972).

■ Westerman challenges the application of § 12–310 to insulate from liability a party who, like TI here, is the manufacturer of a component part of an improvement to real property. Westerman refers to the legislative history of § 12–310, which discusses architects, engineers, contractors, and builders, and argues that the absence of mention of product manufacturers indicates that Congress did not intend to include that group within the coverage of § 12–310. TI asserts that, to the contrary, the broad language of § 12–310—barring "any action"—indicates no such restriction in the coverage of the statute.

The first step in construing a legislative enactment is to " 'look at the language of the statute by itself to see if the language is plain and admits of no more than one meaning.' " *Peoples Drug Stores, Inc. v. District of Columbia,* 470 A.2d 751, 753

D.C.Code § 12–310 (1981).

(D.C.1983) (en banc) (quoting *Davis v. United States*, 397 A.2d 951, 956 (D.C. 1979)). We apply in our analysis the ordinary meaning of the words of the statute. *Id.*

The plain language of § 12–310 conveys not even a hint that it does not protect the manufacturer of a component of an improvement to real property. The wording of the statute is broad and far-reaching, "*any* action ... resulting from the defective or unsafe condition of an improvement to real property ... shall be barred." (Emphasis added). If the action emanates from an improvement, that language protects all parties involved in its design, manufacture, or installation. When Congress sought to exclude a particular class from the operation of § 12–310, it did so expressly: the statute in explicit terms excludes owners or possessors from the application of § 12–310.

Even though we find a "superficial clarity" in the plain meaning of a statute, we will look to the legislative history to determine if it reveals ambiguities or to effectuate the legislative purpose. *Peoples Drug Stores*, 470 A.2d at 754. The literal meaning of the words of a statute might also be rejected where its application would produce absurd or obviously unjust results. *Id.* We must be presented with "per-

suasive reasons," however, to abandon the plain meaning of the statute. *Id.* at 755.

We agree with Westerman that the legislative history does not expressly mention manufacturers.[2] Yet, neither does the legislative history confine the coverage to architects, engineers, and contractors. The Senate Report explained that the statute protects design professionals, defining that term as "includ[ing] *inter alia,* architects, engineers, contractors, and builders." S. REP. NO. 1274, 92d Cong., 1st Sess. 1 (1972); *see also id.* at 4 ("design professionals and others"). The use of the words "*inter alia*" left open the protected class.

Westerman observes that Congress referred to statutes of repose that had been enacted in 40 states. The floor manager, Congressman Jacobs, noted that the provisions of the District bill "were reasonably comparable to legislation enacted in the States." 118 CONG.REC. H 36939 (1972).

We are aware that the state and federal courts have construed the overwhelming majority of such state statutes to exclude from their coverage product manufacturers and suppliers not otherwise involved in the design of the particular improvement.[3] If the language of § 12–310 were similar to such state statutes, we too might agree

2. However, suppliers were mentioned in a colloquy between Congressman Donald M. Fraser and Robert Schnabel, an attorney for the American Institute of Architects. Congressman Fraser asked whether the statute would bar the owner from impleading "the supplier, contractor, or architect." Schnabel answered that it would. *Amend Statute of Limitations: Hearings on H.R. 6527, H.R. 6687 and H.R. 11544 Before Subcomm. No. 1 of the House Comm. on the District of Columbia,* 90th Cong., 1st Sess. 11 (1967).

3. The contrary minority view is expressed in *Wiggins v. Proctor & Schwartz, Inc.,* 330 F.Supp. 350 (E.D.Va.1971). The court held there that the manufacturer of machinery bolted to the floor of a factory was a person performing "the design, planning, surveying, supervision of construction or construction of such improvement to real property" and thus was immunized from suit by the Virginia statute of repose. *Id.* at

353–54. After *Wiggins,* the Virginia legislature amended its statute so that it expressly did not apply to manufacturers or suppliers of equipment or machinery installed on real property. *See Smith v. Allen-Bradley Co.,* 371 F.Supp. 698, 699 (E.D.Va.1974). *Smith* noted that the amendment was probably inspired by an erroneous interpretation of the original statute in *Wiggins. Id.* at 701 & n. 4.

Of those courts that have held that a statute of repose excluded manufacturers or materialmen, some have gone on to hold that such a distinction rendered the statute unconstitutional as violative of the guarantee of equal protection. *See e.g. Skinner v. Anderson,* 38 Ill.2d 455, 460, 231 N.E.2d 588, 591 (1967); *see generally* Annot., 93 A.L.R.3d 1242, § 3[b] (1979 & 1984 Supp.); Comment, *Limitation of Action, supra.* In view of our disposition of this appeal, we need not reach that issue. Nor do we consider the constitutionality of excluding owners from the protected classes.

with Westerman that manufacturers are excluded from its protection.

The typical state statute, unlike § 12–310, identifies the specific classes of persons to be protected. Most of the states referred to in the legislative history of § 12–310 have adopted a variation of the model statute endorsed by the American Institute of Architects (AIA). *See* Comment, *Limitation of Action, supra*, at 365. The model statute, in pertinent part, states that an action

> for injury to the person or for wrongful death arising out of any such deficiency, shall be brought against any person performing or furnishing the design, planning, supervision or observation of construction, or construction of such an improvement more than four years after substantial completion of such an improvement.

*Id.* 365 n. 31. We consider it significant that Congress did not adopt similar language in § 12–310. Although the legislative history is barren regarding the rationale, that silence surely does not speak louder than Congress' action of rejecting the ubiquitous AIA language in favor of the broad phrase, "any action resulting from." [4] The ambiguous legislative history does not provide "persuasive reasons" to abandon the plain meaning of the statute. Neither do we find that applying the plain meaning produces absurd results or undermines the policy of the statute. Manufacturers, just as architects and engineers, "have no control over an owner whose neglect in maintaining an improvement may cause dangerous or unsafe conditions to develop over a period of years." SEE S.REP. No. 1274, at 2. We therefore affirm the dismissal of Westerman's third-party claim against TI, and affirm as well the trial court's other findings of fact and conclusions of law.[5]

*Affirmed.*

---

**4.** The statute of repose of the neighboring jurisdiction of Maryland is a rare example of a statute that does not draw its wording from the AIA model code. The Maryland statute provides:

(a) *Injury occurring more than 20 years later.*—Except as provided by this section, no cause of action for damages accrues and a person may not seek contribution or indemnity for damages incurred when wrongful death, personal injury, or injury to real or personal property resulting from the defective and unsafe condition of an improvement to real property occurs more than 20 years after the date the entire improvement first becomes available for its intended use.

(b) *Action against architect, professional engineer, or contractor.*—A cause of action for damages does not accrue and a person may not seek contribution or indemnity from any architect, professional engineer, or contractor for damages incurred when wrongful death, personal injury, or injury to real or personal property, resulting from the defective and unsafe condition of an improvement to real property, occurs more than 10 years after the date the entire improvement first became available for its intended use.

(c) *Three-year limitation after accrual of cause of action.*—Upon accrual of a cause of action referred to in subsections (a) and (b), an action shall be filed within 3 years.

(d) *Exception.*—This section does not apply if the defendant was in actual possession and control of the property as owner, tenant, or otherwise when the injury occurred.

(e) *When action accrues.*—A cause of action for an injury described in this section accrues when the injury or damage occurs (An.Code 1957, art. 57, § 20; 1973, 1st Sp.Sess., ch. 2, § 1; 1979, ch. 698; 1980, ch. 605.)

*Md.* [Courts & Judicial Proceedings] *Code Ann.* § 5–108 (1984). The first part, § 5–108(a), is quite similar to § 12–310 (except for the time limit). Although a court has yet to determine whether § 5–108(a) excludes manufacturers, *cf. Allentown Plaza Associates v. Suburban Propane Gas Corp.*, 43 Md.App. 337, 405 A.2d 326 (Md.Ct. Spec.App.1979) (gas meters not improvement to real property when meters rented, temporary, and expressly provided for as personalty in contract), we note that the Maryland statute is composed of broad language for the 20-year limit in part (a), but narrower language—"architect, professional engineer, or contractor"—for the 10-year limit in part (b). It can be argued that such a distinction suggests that the broad language of § 5–108(a), like the broad language of § 12–301, protects a larger class of persons than architects, engineers, and contractors.

**5.** We find without merit Westerman's other asserted grounds for reversal. We reject Westerman's assertion that the trial court's finding of negligence was plainly wrong or without evidence to support it. *See* D.C.Code § 17–305 (1981). Appellees' expert, Dr. Keith, testified, based upon his personal observations of the

premises after the fire, that the fan was mi-
swired to the second heating element. Argu-
ments concerning the weight to be accorded
that testimony are for presentation to the trial
court, not to the appellate court. *See e.g. Robin-
son v. Jones,* 429 A.2d 1372, 1374 (D.C.1981).
The trial court's ruling that Westerman's negli-
gence was the proximate cause, and that the
failure of the Klixon switches was not an inde-
pendent intervening cause of the fire is sup-
ported by the record. Westerman's own em-
ployee, Evans, testified that he would have
checked the Klixon switches if advised that
smoke had been observed. Thus, the trial court
was not plainly wrong in holding that it was
reasonable for Westerman to have anticipated
the failure of the Klixon switches. *See Ceco
Corp. v. Coleman,* 441 A.2d 940, 948 (D.C.1982).
Lastly, the court's determination of damages
was based upon a reasonable estimate, sup-
ported by the record. *See Romer v. District of
Columbia,* 449 A.2d 1097, 1100 (D.C.1982).