Serena BRITT, Plaintiff,

v.

**SCHINDLER ELEVATOR CORPORATION,**
Defendant.

Civ. A. No. 86–0019.

United States District Court,
District of Columbia.

June 11, 1986.

William H. Horkan, Lynn E. Berry, Washington, D.C., for plaintiff.

David Florin, Steven M. Levine, Wilson, Elser, Moskowitz, Edelman & Dicker, Washington, D.C., for defendant.

### MEMORANDUM

GASCH, Senior District Judge.

### INTRODUCTION

This is a suit for damages allegedly sustained when the plaintiff fell after an elevator she entered dropped several inches. The plaintiff contends that the defendant, Schindler Elevator Corporation ("Schindler"), is liable on grounds of negligence, strict liability, express and implied warranties, for its installation and maintenance of the elevator.

Currently before the Court is defendant's motion to dismiss or for summary judg-

ment.[1] In this motion, Schindler argues that, because it has had no involvement with the elevator at issue since 1959, plaintiff's claims are time-barred by the applicable statutes of repose and limitations.

### I. BACKGROUND

On January 7, 1983, Serena Britt attempted to enter elevator number 25 on the fourth floor of the State Department Building. Plaintiff was at that time using a wheelchair. As she entered the elevator car, the entire car allegedly dropped several inches. Plaintiff asserts that the sudden drop caused her wheelchair to tip forward, throwing her onto the floor of the elevator and causing numerous injuries.

Plaintiff's complaint raises four grounds for defendant's liability: negligence, strict liability, express warranty and implied warranty of merchantability. All of these grounds rely on the contention that Schindler designed, manufactured, sold, installed, inspected and maintained the elevator at issue. Schindler, however, asserts that it has not had any involvement with this particular elevator since 1959. Defendant submitted an affidavit by William Partridge, its District Sales Manager, which states that Schindler's predecessor in interest, Haughton Elevator Company, contracted with the federal government in 1959 to "modernize" the elevators located in the State Department. Schindler, however, has offered no clarification of what was entailed in this modernization project.

In its affidavit, Schindler claims no responsibility for the elevator's installation, manufacture, design, operation, inspection or maintenance after 1959. Although plaintiff notes that the elevator bears the name and logo of Schindler's predecessor corporation, plaintiff conceded at the hearing on this matter that the General Services Administration currently maintains elevator number 25. Counsel for plaintiff also informed the Court at the hearing that

---

1. Because defendant's motion is supported by affidavit, it will be treated as a motion for summary judgment. *See* Fed.R.Civ.P. 12(b)(6).

Serena Britt is a federal employee and has received benefits under the Federal Employees' Compensation Act for injuries sustained in the accident.

## II. DISCUSSION

### A. Count One—Negligence

Schindler contends that count one is barred by D.C.Code § 12–310 (1981), a statute of repose. That statute provides that claims involving personal injury caused by defective or unsafe improvements to real property are barred unless the injury occurred within ten years from the date the improvement was substantially completed. The applicability of D.C. Code § 12–310 in this case depends upon whether (1) Schindler's modernization of the elevator in 1959 constituted an improvement to real property, (2) Schindler is entitled to protection under the statute, and (3) the statute is unconstitutional on equal protection and due process grounds.

■ No cases have specifically included the installation or construction of elevators as an improvement under Section 12–310. The D.C. Court of Appeals, however, has held that installation of a heating system and its component switches was an improvement under Section 12–310 since it "was an integral part of the building, without which the structure could not have been used for business." *J.H. Westerman Co. v. Fireman's Fund Ins.,* 499 A.2d 116, 119 (D.C.App.1985). The Court has no difficulty in concluding that elevators are an "integral part" of any multi-story building, so that work performed on an elevator constitutes an "improvement" under Section 12–310. *Cf. Adair v. Koppers Co., Inc.,* 541 F.Supp. 1120 (N.D.Ohio 1982), *aff'd,* 741 F.2d 111 (6th Cir.1984); *Pacific Indemnity Co. v. Thompson-Yeager, Inc.,* 260 N.W.2d 548 (Minn.1977).

■ The D.C. Court of Appeals' decision in *Westerman* also indicates that Schindler should be included in the class of persons protected by Section 12–310. According to *Westerman,* the statute broadly covers, *inter alia,* architects, engineers, contractors,

builders and suppliers. 499 A.2d at 120. Schindler submitted an affidavit, undisputed by plaintiff, that it contracted to modernize the elevators in 1959; as a contractor it is entitled to the protection of the statute of repose.

■ Plaintiff further suggests that the statute of repose cannot insulate Schindler from its "duty to warn" about foreseeable harm from design or manufacturing defects of elevator number 25. The District of Columbia does recognize that a supplier of a product may be liable for foreseeable harm to expected users of the product. *See Payne v. Soft Sheen Products, Inc.,* 486 A.2d 712, 723 (D.C.App.1985) (manufacturer's failure to warn of danger in permanent wave product constituted negligence). Although the Court has no evidence before it which suggests that Schindler supplied or manufactured the elevator at issue, it is clear from the plain language of Section 12–310 that the statute applies to "any action" resulting from unsafe improvements to real property other than actions based on contract. This broad language encompasses Plaintiff's negligence and products liability claims. *See J.H. Westerman Co.,* 499 A.2d at 121 (in § 12–310, Congress favored implementing the broad phrase "any action resulting from").

In response to Schindler's motion for summary judgment, plaintiff argues that Section 12–310 of the D.C.Code fails to immunize Schindler because that statute is unconstitutional on equal protection and due process grounds. Plaintiff's claim is based on the fact that the statute excludes from its coverage owners and actual possessors of real property. D.C.Code § 12–310(b)(2).

■ While Section 12–310 does distinguish between construction professionals and owners or actual possessors of real property, plaintiff is not a member of any of these classes. It therefore is clear that plaintiff lacks standing to challenge the classifications made by Section 12–310. Even if the Court were to make the difficult assumption that plaintiff satisfies the

constitutional requirements of an injury-in-fact caused by the challenged classification and likely to be redressed by a favorable decision, *see Phillips Petroleum Co. v. Shutts,* — U.S. ——, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985), her claim would be barred by the prudential prohibition against assertion of a third party's rights. *See Allen v. Wright,* 468 U.S. 737, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). As the Supreme Court has stated, "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claims to relief on the legal rights or interests of third parties." *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). Plaintiff has demonstrated no relationship between herself and owners or actual possessors of real property which would permit her to assert their legal rights. *See Singleton v. Wulff,* 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976); *FAIC Securities, Inc. v. United States,* 768 F.2d 352 (D.C.Cir.1985).

■ Even if plaintiff did have standing to raise her challenge, the Court would conclude that the classification made by Section 12–310 does not violate the equal protection clause. As plaintiff does not allege that Section 12–310 involves any suspect class or fundamental right, the statute must be upheld "if the classification it creates is 'rationally related to achievement of a legitimate state purpose.'" *Dimond v. District of Columbia,* 792 F.2d 179, 185 (D.C.Cir. 1986) (quoting *Western & Southern Life Insurance Co. v. State Board of Equalization,* 451 U.S. 648, 657, 101 S.Ct. 2070, 2077, 68 L.Ed.2d 514 (1981)). As the legislative history of Section 12–310 reveals, contractors and owners are treated differently by the statute because contractors "have no control over an owner whose neglect in maintaining an improvement may cause dangerous or unsafe conditions to develop over a period of years." S.Rep. No. 1274, 92d Cong., 1st Sess. 2 (1972). The Court also recognizes that a limit on liability may be necessary to encourage contractors and other construction professionals to experiment and upgrade their designs and materials. For these reasons, this Court agrees with the Maryland federal courts' conclusion that Section 12–310 is rationally related to a legitimate state purpose. *See President and Directors of Georgetown College v. Madden,* 505 F.Supp. 557 (D.Md.1980), *aff'd in relevant part and modified,* 660 F.2d 91 (4th Cir. 1981).[2]

■ As a matter of law, therefore, plaintiff's negligence claims are time-barred by the District's statute of repose. The Court notes that plaintiff has failed to put forward affidavits or other evidence to indicate that Schindler had any contact with elevator number 25 subsequent to 1959. Rule 56(e) requires that a party opposing a motion for summary judgment "may not rest upon the mere allegations ... of his pleading, but, by affidavits or ... otherwise ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Should a party fail to meet this requirement, "summary judgment, if appropriate, shall be entered against him." *Id.* See *Zerilli v. Smith,* 656 F.2d 705, 715–16 (D.C.Cir.1981). The defendant's motion for summary judgment

---

2. Plaintiff cites several cases which have held statutes of repose, similar to the District's statute, to be unconstitutional under equal protection standards. See *McClanahan v. American Gilsonite Company,* 494 F.Supp. 1334 (D.Col. 1980); *Skinner v. Anderson,* 38 Ill.2d 455, 231 N.E.2d 588 (1967); *Tabler v. Wallace,* 704 S.W.2d 179 (Ky.1985). The trend, nevertheless, has been to reject federal constitutional attacks on state repose statutes. See, e.g., *Hartford Fire Insurance Company v. Lawrence, Dykes, Goodenberger, Bower & Clancy,* 740 F.2d 1362 (6th Cir.1984) (Ohio statute); *Cournoyer v. Massachusetts Bay Transportation Authority,* 744 F.2d 208 (1st Cir.1984) (Massachusetts statute); *Yarbro v. Hilton Hotels Corp.,* 655 P.2d 822 (Colo. 1982) (en banc); *Cheswold Volunteer Fire Co. v. Lambertson Constr. Co.,* 489 A.2d 413 (Del.1984); *Beecher v. White,* 447 N.E.2d 622 (Ind.App. 1983); *O'Brien v. Hazelet & Erdal,* 410 Mich. 1, 299 N.W.2d 336 (1980); *Lamb v. Wedgewood South Corp.,* 308 N.C. 419, 302 S.E.2d 868 (1983); *Harmon v. Angus R. Jessup Assoc., Inc.,* 619 S.W.2d 522 (Tenn.1981).

is thus granted on plaintiff's first count of negligence.[3]

### B. *Count Two—Strict Liability*

Plaintiff contends that she should recover under a theory holding Schindler strictly liable for placing on the market defective merchandise which later injures a consumer or user. The tort theory of strict liability as explained in Section 402A of the Restatement of Torts (Second) has been adopted in the District of Columbia. *See Berman v. Watergate West, Inc.,* 391 A.2d 1351, 1357 (D.C.App.1978). The broad language of D.C.Code § 12–310—barring "any action" other than an action based on contract—necessarily bars a strict liability tort claim not falling within the 10–year time limit.[4] The Court therefore grants summary judgment in favor of defendant on count two.

### C. *Counts Three and Four—Express and Implied Warranties*

The third and fourth counts in Plaintiff's complaint aver that Schindler made express and implied warranties assuring the general public that elevator number 25 was fit and suitable for its designed use. These claims are based on contract, thus, the limitations prescribed in D.C.Code § 12–310 do not apply. D.C.Code § 12–310(b)(1).

■ Warranty remedies are found in the Uniform Commercial Code as enacted by the District of Columbia. *See* D.C.Code § 28:2–313 *et seq.* (1981). Even if the Court were to assume that Schindler was a "seller," a fact not ascertainable from the evidence submitted, plaintiff's claims are time-barred under § 28:2–725 of the D.C. Code. Plaintiff has four years from the "date of breach" to commence an action. D.C.Code § 28:2–725(1). The date of breach occurs when tender of delivery is made absent *explicit* warranties regarding the future performance of the goods. D.C. Code § 28:2–725(2). Plaintiff argues that all implied warranties are necessarily continuing and that her claim falls within the "future performance" exception to Section 28:2–725(2). Defendant responds by noting that the exception clause applies *only* when a warranty explicitly extends to future performance. The Court agrees. Were it true that all warranties necessarily continue, the exception clause would swallow the general rule that breach occurs at the time of delivery.

■ Again, plaintiff has submitted no evidence concerning Schindler's involvement with the elevator after it "tendered" to the State Department in 1959; nor has plaintiff offered evidence to contravene the statement in Schindler's affidavit that no explicit or implied warranties were made at the alleged "sale" of its elevators in 1959. Therefore, this Court grants summary judgment in favor of the defendant on counts three and four.

### III. CONCLUSION

With respect to count one, plaintiff's claim of negligence is barred as untimely under the District of Columbia's statute of repose for improvements made to real property. As to count two, the Court concludes that the statute of repose also bars any strict liability claim in tort. Finally,

**3.** Plaintiff also suggests that the District of Columbia's recent application of the "discovery rule" in medical malpractice actions should supersede the application of § 12–310 in this matter. Under the discovery rule, the running of the limitations period is tolled until the plaintiff discovered the injury. *See Wilson v. Johns-Manville Sales Corp.,* 684 F.2d 111, 112 (D.C.Cir. 1982); *Burns v. Bell,* 409 A.2d 614, 617 (D.C.App. 1979). Plaintiff's suggestion, however, would render § 12–310 meaningless. If a plaintiff need not state a claim within the ten-year period of § 12–310, "then the whole purpose of section 12–310 and similar statutes—to provide builders and design professionals with a finite period of risk for any one project—would be vitiated." *Madden,* 505 F.Supp. at 577.

**4.** Plaintiff's pleadings also suggest that the strict liability claim is related to Schindler's contractual warranties of fitness and merchantability. Implied warranties and strict liability are closely tied. *See Cottom v. McGuire Funeral Service, Inc.,* 262 A.2d 807, 808–09 (D.C.App.1970) (current doctrines of implied warranty and strict liability in tort are two labels for same legal right and remedy). As the discussion of counts 3 and 4 explains, plaintiff's contractual claims are unsupported and untimely.

the Court determines that the express and implied warranty claims in Counts three and four are time-barred under the statute of limitations for warranty provisions in the Uniform Commercial Code.