O'BRIEN v HAZELET & ERDAL

MUZAR v METRO TOWN HOUSES, INC

BOUSER v CITY OF LINCOLN PARK

OOLE v OOSTING

Docket Nos. 61666, 61342, 61483, 61498-61501. Argued April 3, 1979 (Calendar Nos. 1-4).—Decided December 23, 1980.

The constitutionality of the six-year limitation of actions against state-licensed architects and professional engineers for injury or for wrongful death arising out of a defective and unsafe condition of an improvement to real property is challenged in these cases.

James O'Brien and Peggy O'Brien brought an action against Hazelet & Erdal, an engineering firm which had served as a consultant to the State Highway Department in 1954 in the design of an "S"-curve on US-131 in the City of Grand Rapids, for damages arising in 1975 when a truck which O'Brien was driving went out of control on the curve. The construction of the highway apparently was completed in 1961. The Kent Circuit Court, Stuart Hoffius, J., denied the defendant's motion for accelerated judgment on the ground that the statutory six-year limitation of actions is unconstitutional and deprives persons of their causes of action. The Court of Appeals, R. B. Burns, P.J., and J. H. Gillis and D. C. Riley, JJ., reversed per curiam on the ground that the Legislature may abrogate a cause of action before it vests without offending the constitutional guarantee of due process of law (Docket No. 77-2823). Plaintiffs appeal.

Charlotte Muzar, Carrie Ledbetter, and Agatha Malinowski brought an action against Metro Town Houses, Inc., which sold townhouse units to the plaintiffs, and State Farm Fire and

---

REFERENCES FOR POINTS IN HEADNOTES

[1-3, 6] 16A Am Jur 2d, Constitutional Law § 810.
    51 Am Jur 2d, Limitation of Actions §§ 12, 27.
[4] 51 Am Jur 2d, Limitation of Actions §§ 12, 37.
[5] 51 Am Jur 2d, Limitation of Actions § 84.
[7] 51 Am Jur 2d, Limitation of Actions § 102.
[8, 9] 51 Am Jur 2d, Limitation of Actions §§ 12, 27, 37.

Casualty Company, for breach of warranty arising from the collapse of their townhouse units in 1973. State Farm settled the plaintiffs' claim and brought a third-party claim for indemnity against Dembs Building Company, which built the townhouse complex in 1964. Dembs brought a third-party claim for indemnity against Lehner Associates, Inc., an engineering firm which designed the drainage system for the buildings, alleging that the collapse was caused by defective design of the drainage system. The Macomb Circuit Court, George R. Deneweth, J., granted a motion for accelerated judgment to third-party defendant Lehner, relying on the six-year statute of limitations. The trial court also decided that the statute was constitutional although its protection did not extend to defendant general contractors, builders, owners, tradesmen, and others. The Court of Appeals, T. M. Burns, P.J., and M. F. Cavanagh and D. C. Riley, JJ., reversed, holding that the statutory classification is arbitrary and without reasonable relation to the object of the legislation (Docket Nos. 77-1434, 77-1435). Third-party defendant Lehner Associates, Inc., appeals.

Margaret Bouser and William Bouser brought an action against the City of Lincoln Park, the G. A. Morrison Company, the construction company which built a sidewalk and curb in the city more than ten years earlier, and Pate, Hirn and Bogue, Inc., the architectural firm which designed it, for damages arising in 1975 when Margaret Bouser tripped on the curb. The Wayne Circuit Court, John M. Wise, J., granted the motion of defendant Pate, Hirn and Bogue, Inc., for accelerated judgment, relying on the six-year statute of limitations. The Court of Appeals, Bashara, P.J., and J. H. Gillis, J. (N. J. Kaufman, J., concurring), affirmed, holding that the statute was a constitutional abrogation by the Legislature of the plaintiffs' cause of action and that the plaintiffs lacked standing to challenge the statute on equal protection grounds (Docket No. 77-1410). Plaintiffs appeal.

Anne and John Oole and James Carpenter brought an action against James and Katerina Oosting, the owners of a house, for damages arising in 1973 from the collapse of a wooden deck on the house, which was first occupied in 1966; later added as defendants were E. John Knapp and James G. Terzes, architects, Paul Newhof, engineer, and Fred W. Moss and Albert Casemier, building contractors. The Kent Circuit Court, Stuart Hoffius, J., denied the added defendants' motion for accelerated judgment on the ground that the six-year statute of limitations only applied to plaintiffs who had dealt directly with the architects and engineers. The Court of Appeals, J. H. Gillis,

P.J., and R. B. Burns and Allen, JJ., reversed, holding that the statute is a constitutional abrogation by the Legislature of the plaintiffs' cause of action against the defendant architects and engineer but that it did not apply to the defendant contractors (Docket Nos. 31461-31468). Plaintiffs and defendants Moss and Casemier appeal. In a unanimous opinion written by Justice Levin, the Supreme court *held:*

1. The test to determine whether legislation enacted pursuant to the police power comports with due process is whether the legislation bears a reasonable relation to a permissible legislative objective. The test to determine whether a statute enacted pursuant to the police power comports with equal protection is, essentially, the same. Under traditional equal protection analysis, a legislative classification must be sustained, if the classification itself is rationally related to a legitimate governmental interest.

2. The legislation in this case was enacted in 1967 in response to developments in the law of torts. The Legislature chose to limit the liability of architects and engineers in order to relieve them of the potential burden of defending claims brought long after completion of the improvement and thereby to limit the effect of recent changes in the law upon the availability or cost of the services they provided. The power of the Legislature to determine the conditions under which a right may accrue and the period within which a right may be asserted is undoubted. Statutes enacted in the exercise of that power serve the permissible legislative objective of relieving defendants of the burden of defending claims brought after the time so established.

3. The Legislature's constitutional power to change the common law authorizes it to extinguish common-law rights of action. If the Legislature can entirely abrogate a common-law right, surely it may provide that a particular cause of action can no longer arise unless it accrues within a specified time. The statute in this case is one both of limitation and of repose. For actions which accrue within six years from occupancy, use, or acceptance, the statute prescribes the time within which the action must be brought and thus acts as a statute of limitations. When more than six years have elapsed before an injury is sustained, the statute prevents a cause of action from ever accruing and thus acts as a statute of repose. By enacting a statute which grants architects and engineers complete repose from liability after six years rather than abrogating the causes of action *in toto,* the Legislature struck what it perceived to be a balance between eliminating altogether the tort liability of

these professions and placing no restrictions other than general statutes of limitations upon the ability of injured plaintiffs to bring tort actions against architects and engineers. The Legislature could reasonably have concluded that allowing suits against architects and engineers to be maintained within six years from the time of occupancy, use, or acceptance of an improvement would allow sufficient time for most meritorious claims to accrue and would permit suit against those guilty of the most serious lapses in their professional endeavors.

4. Acts of the Legislature enjoy a presumption of constitutionality and the legislative judgment must be accepted if it is supported by any state of facts either known or which could reasonably be assumed. The Legislature could rationally determine that state-licensed architects and engineers possess characteristics which reasonably distinguish them with respect to the object of the legislation. The design of improvements to real estate is primarily the province of architects and engineers, while the construction of improvements and the realization of designs is primarily the function of contractors. Architects and engineers are required by law to be licensed, while non-residential contractors are not. The Legislature might have concluded that the different education, training, experience, licensing, and professional stature of architects and engineers made it more likely that a limitation on their tort liability would not reduce the care with which they performed their tasks than would be the case with contractors. The Legislature may also have thought it necessary to reduce the potential liability of architects and engineers in order to encourage experimentation with new designs and materials.

5. The statute is not invalid because contractors, as well as architects and engineers, may supervise construction. While this overlap of function may mean that a contractor's potential liability will endure far longer than an architect's or engineer's potential liability for a similar breach, a statutory classification is not constitutionally invalid merely because its application results in hardship or injustice in some cases. The Legislature may have believed that the supervision provided by architects and engineers and that provided by contractors is qualitatively different in a manner which would render it less appropriate to limit the duration of the contractor's tort liability. The Legislature need not treat all phases of a problem at once, and may proceed to address an area one step at a time.

6. It is claimed that this statute not only fails to extend a benefit to contractors but also unfairly burdens them with

liability that should properly be assumed, or at least shared, by architects and engineers. At this stage, however, those arguments are only prophecies; how the statute will work in operation remains to be seen. At present, the statute remains experimental social legislation and is entitled to the deference usually given enactments of that type. After it has been enforced for a sufficiently long time that all the rationales likely to be advanced in its support have been developed, a court should fully examine those rationales and determine whether they are so sound.

The judgments of the Court of Appeals are affirmed as to *O'Brien v Hazelet & Erdal, Bouser v Lincoln Park* and *Oole v Oosting,* and reversed as to *Muzar v Metro Town Houses, Inc.*

84 Mich App 764; 270 NW2d 690 (1978) affirmed.

82 Mich App 368; 266 NW2d 850 (1978) reversed.

83 Mich App 167; 268 NW2d 332 (1978) affirmed.

82 Mich App 291; 266 NW2d 795 (1978) affirmed.

1. CONSTITUTIONAL LAW — DUE PROCESS — LIMITATION OF ACTIONS — ARCHITECTS — ENGINEERS.

The test to determine the constitutionality of the statute which limits the duration of tort liability of state-licensed architects and professional engineers, under the Due Process Clause, is whether the legislation bears a reasonable relation to a permissible legislative objective (US Const, Am XIV; Const 1963, art 1, § 17; MCL 600.5839[1]; MSA 27A.5839[1]).

2. CONSTITUTIONAL LAW — EQUAL PROTECTION — LIMITATION OF ACTIONS — ARCHITECTS — ENGINEERS — BUILDING CONTRACTORS.

The test to determine the constitutionality of the statute which limits the duration of tort liability of state-licensed architects and professional engineers but not of building contractors, under the Equal Protection Clause, is that the legislative classification must be sustained if it is rationally related to a legitimate government interest (US Const, Am XIV; Const 1963, art 1, § 2; MCL 600.5839[1]; MSA 27.5839[1]).

3. LIMITATION OF ACTIONS — STATUTES — LEGISLATIVE PURPOSE.

The power of the Legislature to determine the conditions under which a right may accrue and the period within which a right may be asserted is undoubted; statutes enacted in the exercise of that power serve the permissible legislative objective of relieving defendants of the burden of defending claims brought after the time so established.

4. CONSTITUTIONAL LAW — COMMON LAW — LIMITATION OF ACTIONS.

The Legislature's constitutional power to change the common law permits it to provide that a particular cause of action can no longer arise unless it accrues within a specified time (Const 1963, art 3, § 7).

5. CONSTITUTIONAL LAW — DUE PROCESS — LIMITATION OF ACTIONS — ARCHITECTS — ENGINEERS.

The Legislature could reasonably have concluded that allowing suits against architects and engineers to be maintained within six years from the time of occupancy, use, or acceptance of an improvement to real property would allow sufficient time for most meritorious claims to accrue and would permit suit against those guilty of the most serious lapses in their professional endeavors (US Const, Am XIV; Const 1963, art 1, § 17; MCL 600.5839[1]; MSA 27A.5839[1]).

6. CONSTITUTIONAL LAW — STATUTES — EQUAL PROTECTION.

Acts of the Legislature enjoy a presumption of constitutionality and the legislative judgment must be accepted if it is supported by any state of facts either known or which could reasonably be assumed.

7. CONSTITUTIONAL LAW — EQUAL PROTECTION — LIMITATION OF ACTIONS — ARCHITECTS — ENGINEERS — BUILDING CONTRACTORS.

The Legislature could rationally determine that state-licensed architects and engineers possess characteristics which reasonably distinguish them from building contractors with respect to the object of the statute which limits the duration of tort liability of state-licensed architects and professional engineers but not of building contractors (US Const, Am XIV; Const 1963, art 1, § 2; MCL 600.5839[1]; MSA 27A.5839[1]).

8. CONSTITUTIONAL LAW — EQUAL PROTECTION — LIMITATION OF ACTIONS — ARCHITECTS — ENGINEERS — BUILDING CONTRACTORS.

A statutory classification is not constitutionally invalid under the Due Process Clause merely because its application results in hardship or injustice in some cases; therefore the Legislature may proceed to address the expansion of potential tort liability in the construction industry one step at a time and decide to proceed cautiously by extending qualified protection from the new tort liability to state-licensed architects and engineers, as a distinguishable professional group, but not to building contrac-

tors (US Const, Am XIV; Const 1963, art 1, § 2; MCL 600.5839[1]; MSA 27A.5839[1]).

9. Constitutional Law — Equal Protection — Limitation of Actions — Architects — Engineers — Building Contractors.

The statute which limits the duration of tort liability of state-licensed architects and professional engineers but not of building contractors is experimental social legislation and is entitled to the deference usually given to those enactments; after the statute has been enforced for a sufficiently long time that all the rationales likely to be advanced in its support have been developed, a court should fully examine those rationales and determine whether they are sound (US Const, Am XIV; Const 1963, art 1, § 2; MCL 600.5839[1]; MSA 27A.5839[1]).

*Cholette, Perkins & Buchanan* (by *Bruce M. Bieneman* and *Marc A. Kidder)* for plaintiffs O'Brien.

*Milan & Miller, P.C.* (by *Allen S. Miller),* for plaintiffs Bouser.

*DeGroot, Kalliel, Triant & Conklin, P.C.,* for plaintiffs Oole and Carpenter.

*Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen* by *William D. Booth, Jeannette A. Paskin* and *Christine D. Oldani,* for defendant Hazelet & Erdal, and third-party defendant Lehner Associates, Inc., and by *Dennis Day* and *Jeannette A. Paskin,* for defendant Pate, Hirn and Bogue, Inc.

*Hillman, Baxter & Hammond* (by *Michael D. Wade)* for defendant Knapp.

*Allaben, Massie, Vander Weyden & Timmer* (by *Timothy I. Miner)* for defendant Newhof.

*Warner, Norcross & Judd* (by *Peter L. Gustafson)* for defendants Moss and Casemier.

*Eli Friedman* for third-party defendant Dembs Building Company.

LEVIN, J. These cases present due process and equal protection challenges to the constitutionality of a statute which provides that actions for injuries arising out of the defective and unsafe condition of an improvement to real property may not be maintained against "any state licensed architect or professional engineer performing or furnishing the design or supervision of construction of such improvement more than 6 years after the time of occupancy of the completed improvement, use or acceptance of such improvement".[1]

The challenges are advanced by individual plaintiffs who seek to recover damages from state-licensed architects and engineers for bodily injuries allegedly arising out of defective and unsafe conditions of improvements to real property,[2] by a contractor whose indemnity action against a firm of licensed engineers is likewise statutorily barred six years after occupancy, use or acceptance of the improvement,[3] and by contractors who seek to prevent codefendant architects and engineers who might ultimately contribute a portion of any judgment rendered from being dismissed from the lawsuit.[4]

We conclude that the statute does not violate constitutional precepts of due process[5] and equal protection.[6]

---

[1] MCL 600.5839(1); MSA 27A.5839(1).

[2] *O'Brien v Hazelet & Erdal, Bouser v Lincoln Park,* and the appeals of plaintiffs Oole and Carpenter in *Oole v Oosting,* Docket Nos. 61500 and 61501.

[3] *Muzar v Metro Town Houses, Inc.*

[4] *Oole v Oosting,* Docket Nos. 61498 and 61499, appeals of defendants Moss and Casemier.

[5] US Const, Am XIV, Const 1963, art 1, § 17.

[6] US Const, Am XIV, Const 1963, art 1, § 2.

I

MCL 600.5839(1); MSA 27A.5839(1), enacted by 1967 PA 203, provides:

"No person may maintain any action to recover damages for any injury to property, real or personal, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained as a result of such injury against any state licensed architect or professional engineer performing or furnishing the design or supervision of construction of such improvement more than 6 years after the time of occupancy of the completed improvement, use or acceptance of such improvement. This limitation shall not apply to actions against any person in actual possession and control as owner, tenant or otherwise, of the improvement at the time the defective and unsafe condition of such improvement constitutes the proximate cause of the injury or damage for which the action is brought."

In each of these cases, state-licensed architects or engineers invoked the statute as a bar against claims allegedly arising out of the defective and unsafe condition of an improvement for which they had performed or furnished the design or supervision of construction.

A

James O'Brien was injured on June 28, 1975 when the truck he was driving tipped over on an "S"-curve on US-131 in the City of Grand Rapids. On December 1, 1976, O'Brien and his wife filed suit against Hazelet & Erdal, an engineering firm which allegedly contracted with the Michigan State Highway Department in 1954 to serve as consulting engineer for construction of the road-

way in question. Construction of the highway was apparently completed sometime in 1961. The O'Briens alleged that Hazelet & Erdal had negligently permitted the highway to be built with a number of defects and hazards that proximately caused the accident that injured Mr. O'Brien.

Hazelet & Erdal moved for accelerated judgment, claiming that the suit was barred by the statute because it had not been commenced within six years after Hazelet & Erdal had completed its work on the highway construction project.

The trial judge denied the motion, ruling that "the statute is unconstitutional and deprives persons of their cause of action". The Court of Appeals reversed, declaring that the statute was one of abrogation rather than of limitation and that the Legislature may abrogate a cause of action before it vests without denying due process of law.[7]

### B

In *Muzar v Metro Town Houses, Inc,* Metro contracted with Dembs Building Company in 1964 for the construction of a town house complex in Mount Clemens, Michigan. Dembs subcontracted for the design of the drainage system for the town house buildings with Lehner Associates, Inc., a professional engineering firm.

In 1965 plaintiffs Charlotte Muzar, Carrie Ledbetter and Agatha Malinowski each purchased one of several town house units which shared a common building. State Farm Fire and Casualty Company insured plaintiffs' town houses against property damage, including collapse.

On January 3, 1973, the building which included

---

[7] *O'Brien v Hazelet & Erdal,* 84 Mich App 764; 270 NW2d 690 (1978).

plaintiffs' town houses collapsed, allegedly due to defects in the construction of the drainage system. The plaintiffs sued Metro and State Farm for breach of warranty in July, 1973, and after Metro was found to be defunct, State Farm settled the plaintiffs' suit for $40,000.

In December, 1975, State Farm brought a third-party complaint against Dembs, claiming that State Farm was subrogated to the original plaintiffs' right to seek recovery of the $40,000 from Dembs. Subsequently, Dembs filed a third-party action for indemnity against Lehner, alleging that the collapse was caused by defective design of the drainage system.

Lehner's motion for accelerated judgment on the basis of the statute was opposed by Dembs on the ground that the statute denied equal protection by irrationally omitting general contractors, builders, owners, and tradesmen from its protection. The trial court granted accelerated judgment. The Court of Appeals reversed, holding the classification in the statute "arbitrary and without reasonable relation to the object of the legislation".[8]

C

On August 26, 1976, Margaret and William Bouser filed suit alleging that, while walking in the City of Lincoln Park on April 9, 1975, Mrs. Bouser had tripped on a curb constructed higher than an adjoining sidewalk, causing her to fall and suffer injuries. The Bousers' complaint named as defendants the city; G. A. Morrison Company, the construction firm which installed the curb and sidewalk; and Pate, Hirn and Bogue, Inc., the

[8] *Muzar v Metro Town Houses, Inc,* 82 Mich App 368, 379-380; 266 NW2d 850 (1978).

architectural firm which designed the curb and sidewalk. The work was apparently completed in 1965.

Pate, Hirn and Bogue, Inc., was granted accelerated judgment on the basis of the statute. The Court of Appeals affirmed.[9]

### D

Anne and John Oole and James Carpenter filed suit on January 31, 1975, alleging that they were injured when a wooden deck attached to the home of defendants Oosting gave way on July 10, 1973. The Oosting home, complete with deck, was occupied on or before January 1, 1967. Defendants Knapp and Terzes, registered architects; Newhof, a registered engineer; and Moss and Casemier, contractors, were added by an amended complaint filed June 26, 1975. The added defendants moved for accelerated judgment on the basis of the statute.

The trial judge denied the motions, holding that the statute only applied to persons who had dealt directly with the architects and engineers. The Court of Appeals reversed in part, ruling that the statute is one of abrogation and could validly be applied to the plaintiffs' complaint against the architects and engineer, although its protection did not extend to the contractors.[10]

### E

We granted leave to appeal in these four cases to resolve whether MCL 600.5839(1); MSA 27A.5839(1) "violate[s] equal protection of the law

---

[9] *Bouser v Lincoln Park,* 83 Mich App 167; 268 NW2d 332 (1978).

[10] *Oole v Oosting,* 82 Mich App 291; 266 NW2d 795 (1978).

or due process guarantees (a) in denying a cause of action to persons allegedly injured from negligent design or supervision of construction by state-licensed architects or professional engineers completed more than six years before the injury; and (b) by limiting the tort responsibility of licensed architects and professional engineers but not licensed contractors."[11]

## II

*Shavers v Attorney General*[12] summarized the scope of judicial review of equal protection and due process challenges to socioeconomic legislation:

"The test to determine whether legislation enacted pursuant to the police power comports with due process is whether the legislation bears a reasonable relation to a permissible legislative objective. See *Michigan Canners & Freezers Ass'n, Inc v Agricultural Marketing & Bargaining Board,* 397 Mich 337, 343-344; 245 NW2d 1 (1976).

"The test to determine whether a statute enacted pursuant to the police power comports with equal protection is, essentially, the same. As the United States Supreme Court declared in *United States Dep't of Agriculture v Moreno,* 413 US 528, 533; 93 S Ct 2821; 37 L Ed 2d 782 (1973):

" 'Under traditional equal protection analysis, a legislative classification must be sustained, if the classification itself is rationally related to a legitimate governmental interest.' "

For purposes of resolving either a due-process or an equal-protection challenge, we must first iden-

---

[11] 403 Mich 828-829 (1978).

[12] *Shavers v Attorney General,* 402 Mich 554, 612-613; 267 NW2d 72 (1978).

tify the objective the challenged statute seeks to achieve.

The instant legislation was enacted in 1967 in response to then recent developments in the law of torts. The waning of the privity doctrine as a defense against suits by injured third parties[13] and other changes in the law[14] increased the likelihood that persons taking part in the design and construction of improvements to real property might be forced to defend against claims arising out of alleged defects in such improvements, perhaps many years after construction of the improvement was completed. The Legislature chose to limit the liability of architects and engineers in order to relieve them of the potential burden of defending claims brought long after completion of the improvement and thereby limit the impact of recent changes in the law upon the availability or cost of the services they provided.

The power of the Legislature to determine the conditions under which a right may accrue and the period within which a right may be asserted is undoubted. Statutes enacted in the exercise of that power serve the permissible legislative objective of relieving defendants of the burden of defending claims brought after the time so established.

## III

It is claimed that this legislation violates due

---

[13] See *Spence v Three Rivers Builders & Masonry Supply, Inc,* 353 Mich 120; 90 NW2d 873 (1958). Several modern cases have specifically held the defense of privity of contract unavailable to an architect whose negligence in drawing plans or designs is alleged to have resulted in injury or death of third parties. See Anno: *Architect's liability for personal injury or death allegedly caused by improper or defective plans or design,* 97 ALR3d 455, § 4, pp 463-465.

[14] See Note, *Architectural Malpractice: A Contract-Based Approach,* 92 Harv L Rev 1075, 1081-1082 (1979).

process because a statute of limitations cannot constitutionally bar a cause of action before all necessary elements constituting the cause of action are present, and must afford the potential plaintiff a reasonable time within which to bring suit.[15]

This Court has previously recognized that the Legislature's constitutional power to change the common law authorizes it to extinguish common-law rights of action.[16] If the Legislature can entirely abrogate a common-law right, surely it may provide that a particular cause of action can no longer arise unless it accrues within a specified period of time. As one Court of Appeals panel explained, the instant statute is both one of limitation and one of repose.[17] For actions which accrue within six years from occupancy, use, or acceptance of the completed improvement, the statute prescribes the time within which such actions may be brought and thus acts as a statute of limitations.[18] When more than six years from such time have elapsed before an injury is sustained, the statute prevents a cause of action from ever accruing. The plaintiff is not deprived of a right to sue a state-licensed architect or engineer because no such right can arise after the statutory period has elapsed.[19]

---

[15] See *Connelly v Paul Ruddy's Equipment Repair & Service Co,* 388 Mich 146; 200 NW2d 70 (1972), and *Dyke v Richard,* 390 Mich 739; 213 NW2d 185 (1973).

[16] *Bean v McFarland,* 280 Mich 19; 273 NW 332 (1937).

[17] *Oole v Oosting,* 82 Mich App 291, 298-300; 266 NW2d 795 (1978).

[18] To a plaintiff whose injury occurred and whose right of action thus vested shortly before expiration of the six-year period, the statute arguably might deny due process by failing to "afford a reasonable time within which suit may be brought". *Price v Hopkin,* 13 Mich 318, 324 (1865). However, no case presenting such facts is before us and we intimate no opinion as to the proper resolution of such a case.

[19] In upholding a similar New Jersey statute, the New Jersey Supreme Court said:

"[The statute] does not bar a cause of action; its effect, rather, is to

By enacting a statute which grants architects and engineers complete repose after six years rather than abrogating the described causes of action *in toto,* the Legislature struck what it perceived to be a balance between eliminating altogether the tort liability of these professions and placing no restriction other than general statutes of limitations upon the ability of injured plaintiffs to bring tort actions against architects and engineers. The Legislature could reasonably have concluded that allowing suits against architects and engineers to be maintained within six years from the time of occupancy, use, or acceptance of an improvement would allow sufficient time for most meritorious claims to accrue and would permit suit against those guilty of the most serious lapses in their professional endeavors.

## IV

The opponents of the statute argue that it violates equal protection (1) by singling out the victims of the negligence of architects and engineers for a burden not imposed upon the victims of other tortfeasors, and (2) by failing to extend the same protection to others who may be responsible for defects in improvements to real property—particularly contractors, who may be contractually obligated to follow the directives of architects and engineers, yet after six years find themselves the

---

prevent what might otherwise be a cause of action, from ever arising. Thus injury occurring more than ten years after the negligent act allegedly responsible for the harm, forms no basis for recovery. The injured party literally has *no* cause of action. The harm that has been done is *damnum absque injuria*—a wrong for which the law affords no redress. The function of the statute is thus rather to define substantive rights than to alter or modify a remedy. The Legislature is entirely at liberty to create new rights or abolish old ones as long as no vested right is disturbed." *Rosenberg v Town of North Bergen,* 61 NJ 190, 199-200; 293 A2d 662, 667 (1972).

only available target for plaintiffs alleging injury resulting from latent defects.

Acts of the Legislature enjoy a presumption of constitutionality and the legislative judgment must be accepted if it is supported by " 'any state of facts either known or which could reasonably be assumed' ".[20] In reviewing equal protection challenges to socioeconomic legislation, the United States Supreme Court has said that the Constitution "is offended only if the classification rests on grounds wholly irrelevant to the achievement of the [legislative] objective" and that a "statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it".[21]

The Legislature could rationally determine that state-licensed architects and engineers possess characteristics which reasonably distinguish them with respect to the object of the legislation. The design of improvements to real estate is primarily the province of architects and engineers, while the construction of improvements and the realization of designs is primarily the function of contractors. Architects and engineers are required by law to be licensed, while non-residential contractors are not.[22] The Legislature might have concluded that the different education, training, experience, licensing and professional stature of architects and engineers made it more likely that a limitation on their tort liability would not reduce the care with which they performed their tasks than would be the case with contractors.

The Legislature may also have thought it necessary to reduce the potential liability of architects

---

[20] *Shavers, supra,* pp 613-614.

[21] *McGowan v Maryland,* 366 US 420, 425-426; 81 S Ct 1101; 6 L Ed 2d 393 (1961).

[22] Residential builders are required to be licensed by 1965 PA 383 as amended, MCL 338.1501 *et seq.;* MSA 18.86(101) *et seq.*

and engineers in order to encourage experimentation with new designs and materials. Innovations are usually accompanied by some unavoidable risk. Design creativity might be stifled if architects and engineers labored under the fear that every untried configuration might have unsuspected flaws that could lead to liability decades later.

The statute is not invalid because contractors, as well as architects and engineers, may supervise construction. While this overlap of function may mean that a contractor's potential liability will endure longer than an architect's or engineer's potential liability for a similar breach, a statutory classification is not constitutionally invalid merely because its application results in hardship or injustice in some cases.[23] The Legislature may have believed that the supervision provided by architects and engineers and that provided by contractors is qualitatively different in a manner which would render it less appropriate to limit the duration of the contractor's tort liability. For example, a contractor may have better access to the details of ongoing construction and thus be in a superior position to assure that the improvement is built safely.

The Legislature need not treat all phases of a problem at once, and it may proceed to address an

---

[23] "In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis', it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' *Lindsley v Natural Carbonic Gas Co,* 220 US 61, 78; 31 S Ct 337; 55 L Ed 369 (1911). 'The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific.' *Metropolis Theatre Co v Chicago,* 228 US 61, 69-70; 33 S Ct 441; 57 L Ed 730 (1913)." *Dandridge v Williams,* 397 US 471, 485; 90 S Ct 1153; 25 L Ed 2d 491 (1970).

area one step at a time.[24] The expansion of poten-
tial tort liability in the construction industry is of
recent vintage, and the consequences of placing
limits on that liability could not be determined
with certainty in advance. The Legislature can
decide to proceed cautiously by extending qualified
protection to a distinguishable professional group.

## V

It is claimed that this statute not only fails to
extend a benefit to contractors but also unfairly
burdens them with liability that should properly
be assumed, or at least shared, by architects and
engineers. At this stage, however, those arguments
are only prophecies; how the statute will work in
operation remains to be seen.

These four cases are the first involving the
statute to reach the Michigan appellate courts in
the 13 years since its enactment. Only time and
experience will tell whether juries tend to unfairly
hold contractors liable for the defaults of others
and whether contractors are left to shoulder alone
the burden of judgments for which, but for the
statute, they might have had a right to indemnity
or contribution. There is now no reason to suppose
that a properly instructed jury will hold an inno-
cent contractor responsible for injury caused by a
defect resulting from an architect's or engineer's
breach of duty. Trial judges should carefully scru-
tinize claims against contractors to assure that a
case is submitted to the jury only where there is
evidence that the contractor has himself acted or
failed to act in such a way as to subject him to
liability.

At present, the statute remains experimental
social legislation and is entitled to the deference

---

[24] *Williamson v Lee Optical of Oklahoma, Inc,* 348 US 483; 75 S Ct
461; 99 L Ed 563 (1955).

usually given enactments of that type. After it "has been enforced for a sufficiently long period of time that all the rationales likely to be advanced in its support have been developed, a court should fully examine those rationales and determine whether they are sound".[25]

We affirm the Court of Appeals in *O'Brien, Bouser,* and *Oole,* and reverse in *Muzar.* In all four cases this disposition requires remand to the trial court for further proceedings consistent with this opinion.

COLEMAN, C.J., and KAVANAGH, WILLIAMS, FITZGERALD, RYAN, and BLAIR MOODY, JR., JJ., concurred with LEVIN, J.

---

[25] *Manistee Bank & Trust Co v McGowan,* 394 Mich 655, 672; 232 NW2d 636 (1975).