ST. PAUL FIRE & MARINE
INSURANCE COMPANY,
Appellant,

v.

GETTY OIL COMPANY, Getty Refining and Marketing Corporation, Skelly Oil Company, Schowengerdt Plastering Company, Black and West Architects, Flint Steel Corporation, and Flintco, Inc., Appellees.

No. 63340.

Supreme Court of Oklahoma.

Oct. 24, 1989.

As Corrected Nov. 8, 1989.

John Howard Lieber, Knight, Wagner, Stuart, Wilkerson & Lieber, Tulsa, for appellant.

Harry M. Crowe, Jr., Crawford, Crowe & Bainbridge, Tulsa, for appellee, Black and West Architects.

Philip McGowan, Sanders & Carpenter, Tulsa, for appellees, Flint Steel Corp. and Flintco, Inc.

Hugh A. Baysinger and Stephanie J. Mather, Pierce, Couch, Hendrickson, Johnston & Baysinger, Oklahoma City, for amicus curiae.

SUMMERS, Justice.

At issue is the constitutionality of 12 O.S.1981 § 109. That statute bars tort actions against builders, architects, owners and the like for damages by reason of defective design or construction for injuries occurring more than 10 years after completion of construction of an improvement to real property. Plaintiff's suit was held barred by the statute in the trial court, but the Court of Appeals reversed on constitutional grounds in an opinion reported at 58 OBJ 1286 (Supplemental opinion on rehearing at 58 OBJ 2598). The architect and building contractors petitioned us for certiorari, and that we have granted. We now determine the legislation to be constitutional, at least insofar as can be litigated within the limits of judicial review permissible in the case.

The Getty building in Tulsa had been standing approximately 20 years when a ceiling collapsed in August of 1981. Boulder Bank & Trust Co. was the tenant, and suffered property damages in the sum of $60,525.00 as result of the collapse. Boulder Bank recovered that amount from its insurer, St. Paul Fire & Marine, prompting St. Paul to file its subrogation action against the architects, the building contractors, and the ceiling plasterers.

St. Paul's causes of action sounded in both tort and contract under theories of negligence, warranty, products liability and breach of lease. The appeal presently before this court focuses only upon alleged errors arising from the trial court's orders sustaining demurrers and granting motions to dismiss in favor of defendants Black and West Architects, Flint Steel Corporation and Flintco, Inc.

The Court of Appeals characterized St. Paul's contentions on appeal as addressing only state constitutional issues and confined its opinion thereto, finding that § 109 offends Art. 2, § 6, Art. 23, § 7, Art. 5, § 46 and Art. 5, § 51 of the Oklahoma Constitution, and noted as well that the statute was "vague and uncertain." In their petition for certiorari, the defendants assert that the "question presented is whether said statute is in conflict with the Constitution of the State of Oklahoma". Although it alluded to equal protection objections arising under the Fourteenth Amendment to the United States Constitution, St. Paul did not support those vague allegations with convincing citations of authority and thus we will not consider it on

appeal. *Fleming v. Baptist Gen. Conventions*, 742 P.2d 1087, 1096 (1987); *Peters v. Golden Oil Co.*, 600 P.2d 330, 331 (1979).

Section 109 was enacted in 1978 after we overturned a portion of a similar statutory scheme in *Loyal Order of Moose Lodge 1785 v. Cavaness*, 563 P.2d 143 (Okl.1977). The section now provides as follows:

No action in tort to recover damages
(i) for any deficiency in the design, planning, supervision or observation of construction or construction of an improvement to real property,
(ii) for injury to property, real or personal, arising out of any such deficiency, or
(iii) for injury to the person or for wrongful death arising out of any such deficiency, shall be brought against any person owning, leasing, or in possession of such an improvement or performing or furnishing the design, planning, supervision or observation of construction or construction of such an improvement more than ten (10) years after substantial completion of such an improvement. 12 O.S.1981 § 109.

St. Paul contends that the statute offends Oklahoma Constitutional provisions assuring access to the courts (Art. 2, § 6), constitutes prohibited special legislation (Art. 5, § 46), offends the prohibition barring grants of special privileges and immunities (Art. 5, § 51), and unconstitutionally abrogates a cause of action for wrongful death (Art. 23, § 7).

We decline to address the issues regarding wrongful death and vagueness, as neither issue is properly before us. The ceiling of the Getty building collapsed on a Sunday causing only property damages. Consequently, we adhere to the rule that the

unconstitutionality of a statute may not be urged by resort to hypothetical applications. Imbedded in traditional rules governing constitutional adjudication is the general principle that a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied to others in situa-

tions not before the court. *Kimery v. Public Service Co. of Oklahoma*, 622 P.2d 1066, 1070 (Okl.1981) (footnote omitted).

We thus offer no opinion regarding the constitutionality of § 109 as measured against Art. 23, § 7 of the Oklahoma Constitution.

■ We further decline to measure the statute against the vagueness standard mentioned by the Court of Appeals. The defendants do not now contest that Black and West Architects participated in the design or that Flintco and Flint Steel participated in the construction of the Getty building which was substantially completed by 1961. Nor does anyone contest that the damages complained of occurred "more than ten years after substantial completion." 12 O.S.1981 § 109. One "may not successfully challenge [a] statute for vagueness if it clearly applies to his conduct." *Kimery v. Public Service Co.*, 622 P.2d 1066, 1070 (Okl.1981); *Parker v. Levy*, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974). The express terms of the statute clearly include all parties before us and apply to their conduct.

Thus we focus our analysis upon the remaining state constitutional questions. In so doing we must measure the present statute against the various constitutional provisions and in light of our earlier decision in *Loyal Order of Moose v. Cavaness*, supra.

■ In *Loyal Order of Moose* we declared Sections 109–113 of Title 12 of the Oklahoma Statutes unconstitutional. An unconstitutional statute "is wholly void, and in legal contemplation is as inoperative as if it had never been passed." *State v. Board of County Comm'rs*, 188 Okl. 184, 107 P.2d 542, 544 (1940) (Court's syllabus 1). The legislature responded to our decision by enacting the present § 109 in 1978. Consequently, the only presently operative statute of repose which limits actions to recover damages arising out of the design and construction of improvements to real property is 12 O.S.1981 § 109. The remaining sections remain void.

We have examined the limited remaining issues in light of our own constitution, and we have turned to the abundant authority from sister jurisdictions as well as the existing commentaries on similar legislation. Numerous articles illustrate the controversy and debate surrounding these statutes of repose, a form of which statute exists now in nearly every American jurisdiction. See for example the authorities cited in *Smith v. Westinghouse*, 732 P.2d 466, 467 n. 3 (Okl.1987). A complete list of the states which have such statutes and their status is found in Appendix A. For reasons to be stated we uphold the constitutionality of 12 O.S.1981 § 109 as a reasonable legislative measure, finding that the statute does not disturb vested rights, that it treats equally an entire class of similarly situated persons or things, and bears a reasonable relation to the object to be accomplished. We make no comment regarding federal constitutional questions should they later be advanced, and reserve for the appropriate day examination of the wrongful death provision of the statute.

In passing upon the constitutionality of 12 O.S.1981 § 109, we do not depart from the long standing rules which cloak any legislation with the presumption of constitutionality unless the statute is "clearly, palpably and plainly inconsistent with the constitution." *Reherman v. Oklahoma Water Resources Bd.*, 679 P.2d 1296 (Okl. 1984); *Matter of Daniel, Deborah and Leslie H.*, 591 P.2d 1175 (Okl.1979); *Black v. Ball Janitorial Serv., Inc.*, 730 P.2d 510 (Okl.1986). We measure legislation not merely against a single constitutional provision. Rather, "statutes and generally, the constitution must be construed as a consistent whole, in harmony with common sense and reason", with all pertinent portions of the constitution being construed together. *Cowart v. Piper Aircraft Corp.*, 665 P.2d 315 (Okl.1983); *Tate v. Logan*, 362 P.2d 670 (Okl.1961).

Further, statutes should be construed whenever possible so as to uphold their constitutionality. *Kimery*, 622 P.2d 1066 (Okl.1981). In construing statutes, we endeavor to ascertain and give effect to the express intention of the legislature. "Whenever an act of the legislature can be so construed and applied as to avoid conflict with the constitution, and give it the force of law, such construction will be adopted by the courts." *Williams v. Bailey*, 268 P.2d 868, 871 (Okla.1954).

## I.

Access To The Courts, Article Two, § 6

Mindful of these principles, we focus our attention first upon St. Paul's contention that the statute of repose contravenes Art. 2, § 6 of the Oklahoma Constitution by denying plaintiffs a remedy for a wrong. The section provides:

> The courts of justice of the state shall be open to every person, and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation; and right and justice shall be administered without sale, denial, delay, or prejudice.

This court has unequivocally stated that "it is within the power of the Legislature to modify or abolish an old right under common law as long as no vested right is disturbed." *Loyal Order of Moose Lodge 1785 v. Cavaness*, 563 P.2d 143, 146 (Okl. 1977). We cited with approval the reasoning in *Rosenberg v. Town of North Bergen*, 61 N.J. 190, 293 A.2d 662 (1972), which distinguishes legislative abrogation of an existing cause of action from the situation in which the statute of repose so defines the right as to prevent a cause of action from ever arising. *Id.* We also noted that the legislature had, in fact, abolished certain causes of action which existed in the common law. This rule reaffirms the constitutional principle that "the authority of the Legislature shall extend to all rightful subjects of legislation ..." Okla. Const., Art. 5, § 36. Thus, within the province of the legislature lies the authority to define what constitutes an actionable wrong, provided of course, that such legislation may not disturb a vested right. *Silver v. Silver*, 280 U.S. 117, 50 S.Ct. 57, 74 L.Ed. 221 (1929); *Loyal Order of Moose*, 563 P.2d at 146; *Williams v. Bailey*, 268 P.2d 868 (Okla.1954). *See also Duke Power Co. v.*

*Carolina Envirtl. Study Group, Inc.*, 438 U.S. 59, 87–88 n. 32, 98 S.Ct. 2620, 2638 n. 32, 57 L.Ed.2d 595 (1978), wherein the Supreme Court, *quoting Second Employers Liab. Cases*, 223 U.S. 1, 32 S.Ct. 169, 56 L.Ed. 327 (1912), stated "a person has no property, no vested interest, in any rule of common law."

In balancing the constitutional provision relating to legislative authority in Art. 5, § 36 with the "open access" provision of Art. 2, § 6, we adhere to our ruling that Art. 2, § 6 of the Oklahoma Constitution is "a mandate to the judiciary and was not intended as a limitation on the legislative branch of government." *Adams v. Iten Biscuit Co.*, 162 P. 938 (Okla.1917). In *Wagner County Election Bd. v. Plunkett*, 305 P.2d 525, 530–531 (Okl.1956), this Court held that Art. 2 § 6 and Art. 5 § 36 must be construed together when considering the conflicting interests protected by each. This construction enables the legislature to define rights so long as its enactments do not otherwise collide with constitutional requirements, and ensures that the judiciary will not deny a forum in which to enforce those rights. This concept also acknowledges the legislative function of changing the common law to reflect a change of time and circumstances. *Dague v. Piper Aircraft Corp.*, 275 Ind. 520, 418 N.E.2d 207, 213 (1981).

■ Art. 2, § 6 does not promise a remedy to every complainant. Rather it requires that a complainant must be given access to a court **if he has suffered a wrong which is recognized in the law.** *Reeves v. Ille Elec. Co.*, 170 Mont. 104, 551 P.2d 647, 650 (1976). Any other interpretation would render meaningless Art. 5, § 36; it would open the courts to any individual who suffered an indignity, affront or humiliation at the instance of another, regardless of whether such act complained of had been recognized by the legislature. *See Reeves*, 551 P.2d at 650. In other words some slings and arrows must remain in the realm of outrageous fortune until legislatively brought into the courtroom.

Section 109 is not a statute of limitations; it is a statute of repose. Rather than disturbing a vested substantive right, "a statute of repose marks [its] boundary." *Reynolds v. Porter*, 760 P.2d 816 (1988). It sets an outer boundary in time beyond which no cause of action may arise for conduct that would otherwise have been actionable.

In the early days of statehood such a statute was unknown, and equally as unknown was a builder's liability to persons with whom he had no privity of contract. In *Lisle v. Anderson*, 159 P. 278 (Okl.1916) we expanded a builder's duty to include responsibility to others rightfully on the property during construction notwithstanding lack of privity or a master-servant relationship. This same year marks the case of *MacPherson v. Buick Motor, Co.*, 217 N.Y. 382, 111 N.E. 1050 (1916) which laid to rest the English rule of *Winterbottom v. Wright*, 152 Eng.Rep. 402 (1842) that no liability rests with a manufacturer for injuries to one with whom he was not in privity, and replaced it with an obligation that manufacturers undertake to make with care products which may reasonably be foreseen for use by one other than the initial purchaser when the product carries with it a known danger.

Even as late as 1924, this Court cited the general rule that an independent contractor is not liable to third persons for an injury caused by work done by the contractor where the contractee had accepted the work prior to injury. *Armstrong v. City of Tulsa*, 102 Okl. 49, 226 P. 560, 563 (1924). Not until 1961 did we completely apply to design and construction cases the modern rule that

> no privity of contract is essential to support liability for negligence in respect of acts or instrumentalities which are imminently dangerous. The liability in such instances ... depends merely on the duty of every man to act so as not to injure the persons or property of others. *Leigh v. Wadsworth*, 361 P.2d 849, 852 (Okl. 1961).

Boundaries similar to § 109 have legislatively emerged nationwide in response to the disappearance of the privity doctrine and to judicial modification of some statu-

tory limitations by application of the discovery rule. *Reynolds,* supra at 818.[1] At least forty-six (46) states have adopted such legislation. Of the forty-two (42) who have addressed its validity, thirty (30) have upheld its constitutionality; twelve (12) have found it invalid. The period after which liability is cut off has varied from four (4) years to fifteen (15) years. Comment, *Statutes of Repose for Improvements to Real Property: Equal Protection Considerations,* 22 Am.Bus.L.J. 343, 345 n. 14 (1984).

In *O'Brien v. Hazelet & Erdal,* 410 Mich. 1, 299 N.W.2d 336 (1980), the Michigan Supreme Court upheld the constitutionality of a similar statute of repose. The plaintiff alleged the statute was violative of due process as it barred his cause of action before it arose.[2] The Court recognized the legislature's authority to amend the law to reflect current societal concerns, explaining that a "balance between eliminating altogether the tort liability of these professions and placing no restriction ... upon the ability of injured plaintiffs to bring tort actions against architects and engineers" was needed. *Id.* 299 N.W.2d at 341. By limiting the time within which actions could be brought against architects and engineers, the legislature sought to limit the impact of recent changes in the law which otherwise allowed these professions to incur liability long after the completion of the improvement.

By defining the perimeters of the substantive right, 12 O.S.1981 § 109 in effect adds an additional element to tort claims enumerated thereunder. To state a prima facie claim plaintiffs seeking tort recovery for injuries arising out of the design, planning, construction, or supervision of construction of improvements to real property must show all the elements of the tort *and* that the injury complained of occurred not more than ten years after substantial completion of the improvement. Hence, § 109 does not bar a cause of action; its effect is rather to prevent what otherwise might be a cause of action from ever arising. *See Rosenberg,* 293 A.2d at 667. The injured party literally has no cause of action. If the harm has not been so categorized by the legislature, it is *damnum absque injuria*—a loss for which the law affords no redress. *Rosenberg,* 293 A.2d at 667. *See* Comment, *Due Process Challenges to Statutes of Repose,* 40 Sw.L.J. 997 (1986). Black's Law Dictionary 354 (5th Ed.1979).

Following these principles we find that St. Paul has not been denied a vested right by the statute, and that is because no cause of action for this injury ever came into being. No substantive right having vested, no denial of remedy occurred. *See Rosenberg,* 293 A.2d at 667.

Once we have determined that the right of access to the courts protects only those substantive rights which have vested, it follows that no fundamental right is at stake in the present case. Thus, we need not apply a strict scrutiny standard of review, which is used when "the classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class." *Massachusetts Bd. of Retirement v. Murgia,* 427 U.S. 307, 312, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520 (1976). 613 P.2d 1041, 1044 (Okl.1980).[3] Unlike *Thayer v. Phillips Petroleum Co.,* 613 P.2d at 1044–45, wherein we held that a statute relating to

---

**1.** In *Reynolds,* we noted that the recent appearance of the discovery rule allows tolling of limitations in certain tort cases "until the injured party knows or, in the exercise of reasonable diligence, should have known of the injury." *Id.* at 820 n. 8. See also *Continental Oil Co. v. Williams,* 207 Okl. 501, 250 P.2d 439, 441 (1952); *Seitz v. Jones,* 370 P.2d 300, 302 (Okla.1962); *Gouin v. Continental Oil Co.,* 590 P.2d 704, 707 (Okl.App.1979).

**2.** One writer has noted that challenges to these statutes whether framed as violative of 14th Amendment Due Process or state open court provisions are virtually identical in arguments and issues. *Comment, Due Process Challenges to Statutes of Repose,* 40 Sw.L.J. 997, 1006 (1986).

**3.** The same analysis as is applied in equal protection cases is used to determine state constitutional issues regarding right of access. *See* Comment, *Due Process Challenges to Statutes of Repose,* 40 Sw.L.J. 997, 998 n. 8 (1986). This Court has applied the equal protection analysis when deciding questions of access to Court. *Thayer,* 613 P.2d at 1044–45.

payment of attorney's fees impinged upon a fundamental right of access, the present case does not involve the denial of a fundamental right.

Instead, we apply the rational basis test to determine whether the statute is rationally related to a legitimate government interest. *Fair School Fin. Counsel v. State*, 746 P.2d 1135, 1144 (Okl.1987); *Kimery v. Public Service Co.*, 622 P.2d 1066, 1069–71 (Okl.1981); *Klein v. Catalano*, 386 Mass. 701, 437 N.E.2d 514, 522 (1982). We hold that § 109 is rationally related to the legitimate government objectives of providing a measure of security for building professionals whose liability could otherwise extend indefinitely. *Rosenberg*, 293 A.2d at 667–68. It also serves the legitimate objective of avoiding the difficulties in proof which arise from the passage of time. *Klein*, 437 N.E.2d at 520. Thus, § 109 is not violative· of Art. 2, § 6.[4]

## II.

### Special Legislation, Article Five, § 46

■ Under specific circumstances, the Oklahoma Constitution strictly prohibits special legislation in order to guarantee the equal operation of law as to all citizens. *State v. Fletcher*, 168 Okl. 538, 34 P.2d 595 (1934). Art. 5, § 46 provides:

> The Legislature shall not, except as otherwise provided in this constitution, pass any local or special law authorizing: ... limitation of civil or criminal actions.

The focus here is upon the prohibition against "limitation of civil ... actions."

"In a § 46 attack, the only issue to be resolved is whether a statute upon a subject enumerated in that section targets for different treatment less than an entire class of similarly . situated persons or things." *Reynolds v. Porter*, 760 P.2d 816, 823 (Okl.1988). This test requires us to determine first whether 12 O.S.1981 § 109 falls within the constitutional category as a limitation of a civil action. We find that it does not. Article 5, § 46 applies to statutes of limitation which operate "from the time the elements of a cause of action arise." *Reynolds* at 820. The challenged statute, one not of limitation, but of repose, "runs from a specific negligent act or event *regardless of when the harm or damage occurs." Id.* (emphasis supplied).

By actually defining a substantive right, the statute of repose clearly distinguishes itself from the statute at issue in *Reynolds*,[5] in which the statute of limitations failed by identifying and treating differently one subclass of tort claimants from another.

No such inequity obtains by operation of the statute of repose here at issue. Section 109 itself defines the class. Members of the barred class include all tort claimants whose injuries occur more than ten years after substantial completion of an improvement for real property. Thus, the statute of repose does not procedurally "bar the remedy after a substantive right has vested." *Reynolds* at 820. Consequently, 12 O.S.1981 § 109 falls outside the enumerated prohibitions in Art. 5, § 46 of the Okla-

---

**4.** We do not address the issue raised in *Terry v. New Mexico State Highway Comm'n*, 98 N.M. 119, 645 P.2d 1375 (1982), wherein the plaintiff's cause of action accrued three months before the expiration of time provided in the statute of repose. The New Mexico Supreme Court held that because three months was not reasonable time within which to bring the cause of action, the application of the statute to the facts resulted in a deprivation of due process. *See also* Comment, *Due Process Challenges to Statutes of Repose*, 40 Sw.L.J. 997 (1986).

**5.** The statute invalidated by *Reynolds v. Porter*, 59·OBJ 1987 (Okla.1988) appears at 76 O.S.1981 § 18 and provides

> An action for damages for injury or death against any physician, health care provider or hospital licensed under the laws of this state, whether based in tort, breach of contract or otherwise, arising out of patient care, shall be brought within two (2) years of the date the plaintiff knew or should have known, through the exercise of reasonable diligence, of the existence of the death, injury or condition complained of; provided any action brought more than three (3) years from the date of the injury shall be limited to actual medical and surgical expense incurred or to be incurred as a direct result of said injury, provided, however, the minority or incompetency when the cause of action arises will extend said period of limitation.

homa Constitution, and its validity cannot be successfully attacked thereunder.

### III.

Exclusive Privileges and Immunities, Article Five, § 51

■ The constitutional prohibition against an exclusive grant of privileges and immunities was intended "to preserve equality between citizens." *State v. Fletcher*, 168 Okl. 538, 34 P.2d 595, 597 (1934); *Kimery v. Public Service Co.*, 622 P.2d 1066 (Okl.1981). Art. 5, § 51 provides:

> The Legislature shall pass no law granting to any association, corporation, or individual any exclusive rights, privileges, or immunities within this state.

In examining legislation under § 51 of Art. 5, we apply an equal protection analysis, bearing in mind that the legislature has wide latitude to create statutory classifications. To withstand constitutional scrutiny, however, the classification must reasonably relate to an important legislative objective. *McCarroll v. Doctors General Hospital*, 664 P.2d 382, 386 (Okl.1983) (citing *Loyal Order of Moose v. Cavaness*, supra).

Clearly, § 109 distinguishes the class of plaintiffs injured within ten years of substantial completion of an improvement to real property from plaintiffs damaged more than ten years after completion. In response to our opinion in *Loyal Order of Moose*, supra, the legislature enacted the new 12 O.S.1981 § 109, and entitled it "an act ... providing for expansion of the limitation of actions to recover damages arising from design, planning or construction of an improvement to real property." 1978 Okl.Sess.Laws 380. The new statute broadened the enumerated classifications to include owners and lessees,[6] and expanded the limitation period from five to ten years. Because of the broader language of the present statute, we find the classifica-

tion itself inoffensive provided we can discern an important legislative objective which reasonably justifies it. This we have done as stated in our numbered part I.

Next we must examine the ten year outer boundary. In order to pass constitutional muster, we must determine that the classification which forms the basis for the differentiation is neither arbitrary nor capricious, and bears a reasonable relation to the object to be accomplished. *Texas Oklahoma Express v. Sorenson*, 652 P.2d 285, 289–90 (Okl.1982).

In tracing the enactment of the present statute we discover that its original form (introduced in 1978 as H.B. 1615)[7] contemplated a time period of five years as in the invalid version. The Senate, upon recommendation by the Senate Judiciary Committee amended the bill expanding the five year limit to ten years.[8] The House approved this measure and the bill passed.

In expanding the time period during which a cause of action may arise, the legislature arrived at a number of years which it believed would put an end to potential liability without unreasonably denying an injured party an opportunity for redress. We have acknowledged the existence of public policy reasons which "might be said to justify outlawing legitimate claims in order that at some definite time there be an end to potential litigation." *Loyal Order of Moose*, supra at 148. Whether our ten year limit arbitrarily classifies to justify that goal requires further examination.

Given the abundance of authorities available for review during the 1978 legislative session, we conclude that the legislature could reasonably have decided that a ten year limit would allow ample time for these kinds of actions to accrue. For example, in 1967 hearings antecedent to passage of the District of Columbia's ten year statute of

---

**6.** We need not construe the language which creates the defendants' classification in order to determine whether manufacturers fall within its parameters (as St. Paul urges), since the class

obviously includes both the architects and contractors before us.

**7.** 1978 House of Representatives Journal at 89.

**8.** 1978 Senate Journal at 528.

repose,[9] a subcommittee considered evidence that 93 percent of all claims against architects are brought within six years of the substantial completion of the construction, and 99 percent of such claims arose within a 12 year period. Hearings on H.R. 6527, H.R. 6678 and H.R. 11544 before Subcommittee No. 1 of the House Committee on the District of Columbia, 90th Congress, 1st Session 28 (1967).[10]

The Oklahoma Legislature expanded the outer limits of the statute of repose by its 1978 enactment. In our construction, we will not "presume that the legislature intended to unjustly discriminate between different cases of the same kind ..." *City of Duncan v. Bingham*, 394 P.2d 456 (Okl. 1964). We instead find that the ten year period strikes a "reasonable balance between the public's right to a remedy and the need to place an outer limit on the tort liability of those involved in construction." *Klein*, supra 437 N.E.2d at 521. Our conclusion is that the present statute does not offend § 51 of Art. 5 of the Oklahoma Constitution.

The statute before us satisfies all state constitutional standards applicable to the facts and parties before us. We therefore vacate the published Court of Appeals opinions, and affirm the trial court's orders dismissing the actions against Black and West Architects, Flint Steel Corporation and Flintco, Inc.

HARGRAVE, C.J., OPALA, V.C.J., and HODGES, LAVENDER, SIMMS, DOOLIN and ALMA WILSON, JJ., concur.

KAUGER, J., concurs in result.

### APPENDIX A

The following states have upheld the statute of repose: Arkansas, *Carter v. Hartenstein*, 248 Ark. 1172, 455 S.W.2d 918 (1970), *cert. denied*, 401 U.S. 901, 91 S.Ct. 868, 27 L.Ed.2d 800 (1971); California,

*Barnhouse v. City of Pinole*, 183 Cal.Rptr. 881, 133 Cal.App.3d 171 (1982); Colorado, *Criswell v. M.J. Brock & Sons, Inc.*, 681 P.2d 495 (Colo.1984) and *Yarbro v. Hilton Hotel Corp.*, 655 P.2d 822 (1982); Connecticut, *Zapata v. Burns*, 207 Conn. 496, 542 A.2d 700 (1988); Delaware, *Cheswold Volunteer Fire Co. v. Lambertson Constr.*, 489 A.2d 413 (Del.1985); District of Columbia, *J.H. Westerman v. Fireman's Fund*, 499 A.2d 116 (D.C.1985); Florida, *Am. Liberty Ins. Co. v. West & Conyers, Architects & Eng'rs*, 491 So.2d 573 (Fla.App. Dist. 2 1986); Georgia, *Nelms v. Georgian Manor Condominium*, 253 Ga. 410, 321 S.E.2d 330 (1984); Idaho, *Twin Falls Clinic & Hosp. Bldg. Corp. v. Hamill*, 103 Idaho 19, 644 P.2d 341 (1982); Illinois, *Continental Ins. Co. v. Walsh Constr. Co.*, 171 Ill.App.3d 135, 121 Ill.Dec. 83, 524 N.E.2d 1131 (1988) and *Matayka v. Melia*, 119 Ill.App.3d 221, 74 Ill.Dec. 851, 456 N.E.2d 353 (1983); Indiana, *Beecher v. White*, 447 N.E.2d 622 (Ind.App.1983); Louisiana, *Bordlee v. Neyrey Park, Inc.*, 394 So.2d 822 (La.App.1981) and *Burmaster v. Gravity Drainage Dist. No. 2*, 366 So.2d 1381 (La.1978); Maryland, *Whiting–Turner Contracting Co. v. Coupard*, 304 Md. 340, 499 A.2d 178 (1985); Massachusetts, *Dighton v. Fed. Pac. Elect. Co.*, 399 Mass. 687, 506 N.E.2d 509 (1987) *cert. denied*, 484 U.S. 953, 108 S.Ct. 345, 98 L.Ed.2d 371 (1987); Michigan, *O'Brien v. Hazelet & Erdal*, 410 Mich. 1, 299 N.W.2d 336 (1980); Minnesota, *Sartori v. Harnischfeger Corp.*, 432 N.W.2d 448 (Minn.1988) and *Calder v. City of Crystal*, 318 N.W.2d 838 (Minn.1982); Mississippi, *Anderson v. Fred Wagner & Roy Anderson*, 402 So.2d 320 (Miss.1981); Montana, *Reeves v. Ille Elec. Co.*, 170 Mont. 104, 551 P.2d 647 (1976); Nebraska, *Williams v. Kingery Constr.*, 225 Neb. 235, 404 N.W.2d 32 (1987); Nevada, *Allstate Ins. Co. v. Furgerson*, 766 P.2d 904 (Nev.1988); New Jersey, *Ramirez v. Amsted Industries*, 86 N.J. 332, 431 A.2d 811 (1981); New Mexico, *Howell v.*

---

**9.** D.C.Code Encycl. § 12–310 (West Supp.1981), held constitutional in *J.H. Westerman v. Fireman's Fund Ins. Co.*, 499 A.2d 116 (Ct.App.1985).

**10.** This report has since been noted by the Supreme Judicial Court of Massachusetts in upholding its similar six year statute. *Klein v. Catalano*, 386 Mass. 701, 437 N.E.2d 514, 521 n. 13 (1982).

*Burk,* 90 N.M. 688, 568 P.2d 214 (1977) and *Terry v. New Mexico State Highway Comm'n,* 98 N.M. 119, 645 P.2d 1375 (1982); North Carolina, *Square D Co. v. C.J. Kern,* 314 N.C. 423, 334 S.E.2d 63 (1985) and *Lamb v. Wedgewood South Corp.,* 308 N.C. 419, 302 S.E.2d 868 (1983); North Dakota, *Bellemare v. Gateway Builders, Inc.,* 420 N.W.2d 733 (N.D.1988); Ohio, *Elizabeth Gamble Deaconess Hosp. v. Turner Constr.,* 14 Ohio App.3d 281, 470 N.E.2d 950 (1984); Oregon, *Davis v. Whiting Corp.,* 66 Or.App. 541, 674 P.2d 1194 (1984); Pennsylvania, *Freezer Storage, Inc. v. Armstrong Cork,* 476 Pa. 270, 382 A.2d 715 (1978); Rhode Island, *Leeper v. Hillier Group, Architects & Planners,* 543 A.2d 258 (R.I.1988) and *Walsh v. Gowing,* 494 A.2d 543 (R.I.1985); Tennessee, *Harmon v. Angus R. Jessup Assoc., Inc.,* 619 S.W.2d 522 (Tenn.1981) and *Kochins v. Linden–Alimak Open Access, Inc.,* 799 F.2d 1128 (6th Cir.1986); Texas, *McCulloch v. Fox & Jacobs,* 696 S.W.2d 918 (Tex.1985); Virginia, *Smith v. Allen–Bradley Co.,* 371 F.Supp. 698 (W.D.Va.1974); Washington, *Jones v. Weyerhaeuser Co.,* 48 Wash.App. 894, 741 P.2d 75 (1987).

The following states have invalidated the statute: Alabama, *Jackson v. Mannesmann Demag Corp.,* 435 So.2d 725 (Ala. 1983); Arizona, *Kenyon v. Hammer,* 142 Ariz. 69, 688 P.2d 961 (1984); Hawaii, *Shibuya v. Architects Hawaii Ltd.,* 65 Hawaii 26, 647 P.2d 276 (1982); Kentucky, *Tabler v. Wallace,* 704 S.W.2d 179 (Ky.1986) *cert. denied,* 479 U.S. 822, 107 S.Ct. 89, 93 L.Ed.2d 41 (1986); New Hampshire, *Henderson Clay Prod., Inc. v. Edgar Wood & Assoc., Inc.,* 122 N.H. 800, 451 A.2d 174 (1982); South Carolina, *Broome v. Truluck,* 270 S.C. 227, 241 S.E.2d 739 (1978); South Dakota, *Daugaard v. Baltic Co-op Bldg.,* 349 N.W.2d 419 (S.D.1984); Utah, *Berry v. Beech Aircraft Corp.,* 717 P.2d 670 (Utah 1985); Wisconsin, *Funk v. Wollin Silo & Equipment, Inc.,* 148 Wis.2d 59, 435 N.W.2d 244 (1989); Wyoming, *Phillips v. ABC Builders,* 611 P.2d 821 (Wyo.1980).

The United States Supreme Court has not addressed the issue, although it has been presented on at least five different occasions. *Ellerbe v. Otis Elevator,* 618 S.W.2d 870 (Tex.Ct.App.1981), *appeal dismissed,* 459 U.S. 802, 103 S.Ct. 24, 74 L.Ed.2d 39 (1982); *Carter v. Hartenstein,* 248 Ark. 1172, 455 S.W.2d 918 (1970), *cert. denied,* 401 U.S. 901, 91 S.Ct. 868, 27 L.Ed.2d 800 (1971); *Pitts v. Unarco Ind., Inc.,* 712 F.2d 276 (7th Cir.), *cert. denied,* 464 U.S. 1003, 104 S.Ct. 509, 78 L.Ed.2d 698 (1983); *Tabler v. Wallace,* 704 S.W.2d 179 (Ky.1986), *cert. denied* 479 U.S. 822, 107 S.Ct. 89, 93 L.Ed.2d 41 (1986); *Dighton v. Fed. Pac. Elec. Co.,* 399 Mass. 687, 506 N.E.2d 509 (1987), *cert. denied,* 484 U.S. 953, 108 S.Ct. 345, 98 L.Ed.2d 371 (1987).