**TXO PRODUCTION CORPORATION, Appellant,**

v.

**OKLAHOMA CORPORATION COMMISSION, Appellee.**

**No. 68862.**

Supreme Court of Oklahoma.

March 24, 1992.

As Corrected April 13, 1992.

Rehearing Denied May 12, 1992.

Clyde A. Muchmore, Barbara Snow Gilbert, Kelley C. Callahan, Harvey D. Ellis,

Jr., Crowe & Dunlevy, Oklahoma City, for appellant.

Lindil C. Fowler, Jr., General Counsel, Gretchen P. Hoover, Deputy General Counsel, Leslie Wilson Pepper, Patricia A. Morris, Oklahoma City, for appellee.

OPALA, Chief Justice.

The issues presented on certiorari are: (1) Is the "Unclaimed Pooled Monies Act" [UPMA][2] constitutional under the federal common law fashioned in *Texas v. New Jersey?*;[3] (2) If, under the facts presented here, the UPMA is held unconstitutional, can it still be treated as partially enforceable in the narrow circumstances set forth in *Texas*? and (3) If the UPMA be found constitutional, does *Texas* bar from the State's temporary custodial reach the funds in question which are to be held in the state treasury in trust for the rightful owner or until claimed by another state having a superior right to their custody or escheat? Because we answer the first question in the affirmative, it is unnecessary to address the second question; we answer the third question in the negative.

## I

### THE ANATOMY OF LITIGATION

TXO Production Corporation [TXO] applied to the Corporation Commission [Commission] for an exception to the UPMA,[4] which would allow it to discontinue remittance of unclaimed funds for the 1986 reporting year.[5] TXO sought exclusion of six items totaling $5,241.00 from the UPMA's custodial taking procedures.[6] The persons entitled to these funds, who own forced pooled oil and gas interests, are unknown or could not be located. At the Commission hearing TXO asserted that under federal common law fashioned in *Tex-*

---

**2.** *Supra* note 1.

**3.** 379 U.S. 674, 85 S.Ct. 626, 13 L.Ed.2d 596 (1965).

**4.** *Supra* note 1.

**5.** TXO had already reported and paid $33,654.20 to the Commission for unclaimed proceeds generated by pooled mineral interests in Oklahoma for the reporting period ending September 11, 1986.

**6.** These items represent bonus payments to owners of forced pooled oil and gas interests located in Oklahoma.

*as,*[7] only the state of an owner's last known address or, if there be no last known address, the holder's state of incorporation (in this case Delaware) may claim the funds by escheat. TXO argued that if it is forced to remit the funds in question, it could be subjected to multiple liability for the same obligation by other states legally entitled to them under the *Texas* standards.

The Commission denied TXO's application solely because no court of competent jurisdiction had declared the UPMA unconstitutional and the Commission held itself to be without authority to grant an exception from compliance with the statutory requirements. The Commission concluded that, as mandated by the UPMA, TXO should remit the disputed funds.

The Court of Appeals reversed the Commission order, holding that under the *Texas* guidelines the UPMA, insofar as it is sought to be applied to the facts of this case, is unconstitutional. Nevertheless, the appellate court held that the UPMA would be enforceable in three situations: 1) when Oklahoma is an unknown pooled owner's last known address; 2) when an unknown pooled owner has no known address and the holder's state of incorporation is Oklahoma; and 3) when an unknown pooled owner's last known address is in a state with no escheat or custodial taking provisions, and Oklahoma is the holder's state of incorporation. In all other situations, the Court of Appeals held, the UPMA would not meet fundamental-law standards. Finally, the appellate court concluded that under the guidelines of *Texas* the contested funds in this case were excluded from Oklahoma's custodial reach. Both

TXO and the Commission sought certiorari. While TXO agrees that the UPMA is unconstitutional insofar as it conflicts with the *Texas* standards, it objects to the appellate declaration of the UPMA's constitutionality in three fact situations, none of which was presented by the appeal. The Commission claims the opinion should have been published since it declares the UPMA to be unconstitutional.[8]

## II

### THE FEDERAL AND STATE STATUTORY REGIME GOVERNING UNCLAIMED PROPERTY

#### A.

#### FEDERAL COMMON LAW

■ In *Texas* the U.S. Supreme Court established priority among multiple states attempting to take custody of or to escheat unclaimed intangible property.[9] The Court limited the states' power by setting guidelines that determine which of the competing states has a right to reach the property for custodial taking or escheat. The Court held *that unclaimed property is subject to custodial taking or escheat only in the state of the owner's last known address.*[10] If there is no record of that address, or if the last known address is in a state with no custodial taking or escheat laws, the property is subject to custodial taking only by the state of the holder's "corporate domicile".[11]

The Supremacy Clause[12] makes federal law the supreme law of the land and

---

7. *Supra* note 3.

8. Because the Court of Appeals' opinion is vacated, we need not address this quest for relief.

9. In *Texas, supra* note 3, the case was brought by Texas against New Jersey, Pennsylvania and Sun Oil Corporation under the original jurisdiction of the U.S. Supreme Court. Texas sought to escheat unpaid debts owed by the corporation. The state of incorporation was New Jersey, the principal place of business was in Pennsylvania, the debts were recorded in Texas corporate offices, and Florida intervened as a state of last known addresses.

10. *Texas v. New Jersey, supra* note 3, 379 U.S. at 681–82, 85 S.Ct. at 631, 13 L.Ed.2d at 601.

11. *Texas v. New Jersey, supra* note 3, 379 U.S. at 682, 85 S.Ct. at 631, 13 L.Ed.2d at 602.

12. Art. 6, cl. 2, U.S. Const., states in pertinent part:
 "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof ... shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

preempts conflicting state laws.[13] In *Texas*, the Court fashioned common-law norms—i.e., rules of non-statutory (judge-made) federal law of limited application to govern interstitially in an exclusively federal field.[14] This form of federal common law is in essence jurisprudence applied in the exercise of the U.S. Supreme Court's constitutional judicature when entertaining interstate disputes. Because in *Texas* the Court was fashioning substantive legal standards for an interstate dispute it is *constitutionally* authorized to settle and for a controversy that lies within the range of Congress' *constitutional* power to regulate by law,[15] the Court's declared common-law norms are binding on the States. "States can no more override ... [federal]

judicial rules validly fashioned than they can override Acts of Congress."[16] Oklahoma courts are hence bound by the federal law's jurisprudential exposition pronounced in *Texas*.[17]

## B.

## THE STATE STATUTORY SCHEME

 We begin our analysis with the cardinal principle of our constitutional law that every statute is to be treated as valid until its nonconformity to fundamental law is clearly shown.[18] The reviewing court will uphold a statute unless it is clearly, palpably and plainly inconsistent with fundamental law.[19] The primary goal of statutory construction is to determine legislative

---

**13.** *United States v. Home Federal S. & L. Ass'n of Tulsa,* Okl., 418 P.2d 319, 325 (1966); *Dean v. Crisp,* Okl.Cr., 536 P.2d 961, 963 (1975); *see Walker v. Maruffi,* 105 N.M. 763, 737 P.2d 544, 547 (N.M.App.1987).

**14.** Federal common law often has been fashioned to govern many forms of interstate disputes. When two or more states lay claim to escheat or custodial taking of the same property, the controversy is one between or among the states. It is not different from disputes arising over state boundaries or rights in interstate streams. *Texas Industries, Inc. v. Radcliff Materials,* 451 U.S. 630, 641, 101 S.Ct. 2061, 2067, 68 L.Ed.2d 500, 509 (1981); *Hinderlider v. La Plata River & Cherry Creek Ditch Co.,* 304 U.S. 92, 110, 58 S.Ct. 803, 810, 82 L.Ed. 1202, 1212 (1938); *see also* Friendly, In Praise of Erie—and of the New Federal Common Law, 35 OBJ 1521, 1530–537 (1964).

In *Texas Industries, supra,* the Court stated that "absent some congressional authorization to formulate substantive rules of decision, *federal common law exists only in such narrow areas as those concerned with the rights and obligations of the United States, interstate ... disputes implicating the conflicting rights of States or ... admiralty cases. In these instances, our federal system does not permit the controversy to be resolved under state law,* either *because the authority and duties of the United States as sovereign are intimately involved* or because the *interstate ... nature of the controversy makes it inappropriate for state law to control." Id.* 451 U.S. at 641, 101 S.Ct. at 2067, 68 L.Ed.2d at 509 (citations omitted) (emphasis added). *See Illinois v. City of Milwaukee,* 406 U.S. 91, 106, 92 S.Ct. 1385, 1394, 31 L.Ed.2d 712, 725 (1972); *Banco Nacional de Cuba v. Sabbatino,* 376 U.S. 398, 425–427, 84 S.Ct. 923, 939–940, 11 L.Ed.2d 804, 821–23 (1964); *National Metropolitan Bank v. United States,* 323 U.S. 454, 456, 65 S.Ct. 354,

355, 89 L.Ed. 383, 388 (1945); *Hinderlider, supra.*

**15.** The terms of Art. 3, § 2, cl. 1, U.S. Const., provide in pertinent part:

"The judicial Power shall extend ... to Controversies between two or more States ..." Art. 3, § 2, cl. 2, U.S. Const., provides in pertinent part:

"In all Cases ... in which a State shall be Party, the Supreme Court shall have original Jurisdiction...."

In *Wyoming v. Oklahoma,* 502 U.S. ——, ——, 112 S.Ct. 789, 796, 117 L.Ed.2d 1, 17 (1992), the Court states that Art. 3, § 2, cl. 2, U.S. Const., provides it "with original jurisdiction in all cases 'in which a State shall be a Party.' Congress has seen fit to designate that this Court 'shall have original and exclusive jurisdiction of all controversies between two or more States.' 28 U.S.C. § 1251(a)."

**16.** *Wilburn Boat Co. v. Fireman's Fund Ins. Co.,* 348 U.S. 310, 314, 75 S.Ct. 368, 370, 99 L.Ed. 337, 342 (1955).

**17.** *United States v. Home Federal S. & L. Ass'n of Tulsa, supra* note 13 at 325.

**18.** *Black v. Ball Janitorial Service, Inc.,* Okl., 730 P.2d 510, 512 (1986); *Public Service Company of Oklahoma v. State,* Okl., 645 P.2d 465, 466 (1982); *Oklahoma Gas & Electric Company v. Corporation Commission,* Okl., 543 P.2d 546, 551 (1975); *McGrady v. Western Farmers Electric Cooperative,* Okl., 323 P.2d 356, 361 (1958).

**19.** *Reherman v. Oklahoma Water Resources Bd.,* Okl., 679 P.2d 1296, 1300 (1984); *Black v. Ball Janitorial Service, Inc., supra* note 18 at 512; *St. Paul Fire & Marine Ins. Co. v. Getty Oil Co.,* Okl., 782 P.2d 915, 918 (1989).

intent.[20] That intent is to be ascertained from the statute in light of its general purpose and object.[21] It is presumed that the legislature has expressed its intent in a statute and that it intended what it so expressed.[22] The statute should then be interpreted to attain that purpose and end.[23] The legislature will not be presumed to have intended an absurd result. Statutory construction that would lead to an absurdity will be avoided if this can be done without violating legislative intent.[24] A reasonable and rational construction is preferred.[25] In order to interpret the UPMA in a manner consistent with legisla-tive intent, we must adopt the construction that would uphold its constitutionality.

■ The UPMA clearly expresses legislative intent to regulate the disposition of unclaimed proceeds derived from forced pooled oil and gas interests where the owners cannot be located.[26] The Act must be construed to achieve this purpose. Section 556 [27] of the UPMA provides that such proceeds held for more than seven years in the UPMA Mineral Owner's Fund shall be transferred to the Unclaimed Property Fund, after which time they shall be subject to the Uniform Disposition of Unclaimed Property Act [Uniform Act].[28] In

---

**20.** The primary objective in statutory construction is to determine the legislative intent. *Midwest City v. Harris,* Okl., 561 P.2d 1357, 1358 (1977); *Lekan v. P & L Fire Protection Co.,* Okl., 609 P.2d 1289, 1292 (1980); *Riffe Petroleum Co. v. Great Nat. Corp., Inc.,* Okl., 614 P.2d 576, 579 (1980); *Hess v. Excise Board of McCurtain County,* Okl., 698 P.2d 930, 932 (1985); *Humphrey v. Denney,* Okl., 757 P.2d 833, 835 (1988); *Ledbetter v. Alcoholic Bev. Laws Enforcement,* Okl., 764 P.2d 172, 179 (1988).

**21.** *See* cases cited in *supra* note 20.

**22.** *Fuller v. Odom,* Okl., 741 P.2d 449, 453 (1987).

**23.** *St. Paul Fire & Marine Ins. Co. v. Getty Oil Co., supra* note 19; *Lekan v. P & L Protection Co., supra* note 20 at 1292; *Bohn v. Divine,* Okl.App., 544 P.2d 916 (1975).

**24.** *Ledbetter v. Alcoholic Bev. Laws Enforcement, supra* note 20 at 179; *LeFlore v. Reflections of Tulsa, Inc.,* Okl., 708 P.2d 1068, 1075 (1985); *Johnson v. Johnson,* Okl., 674 P.2d 539, 542 (1983); *Texas County Irrigation v. Cities Service Oil Co.,* Okl., 570 P.2d 49, 51 (1977).

**25.** *Ledbetter v. Oklahoma Alcoholic Beverage Laws Enforcement, supra* note 20 at 179; *LeFlore v. Reflections of Tulsa, Inc., supra* note 24 at 1075; *Johnson v. Johnson, supra* note 24 at 542.

**26.** The pertinent terms of 52 O.S.1991 § 552 are: "A. The Corporation Commission shall require the *establishment of an escrow account by each holder of monies in each case where:*
1. *Royalties, bonus payments, or other monies are directed to be paid under a pooling order,....* and
2. *Persons entitled to the receipt of such monies are unknown or cannot be located after exercise of due diligence.*
B. The escrow account shall be for the benefit of the rightful recipient of the monies. Any person showing to the holder sufficient proof of identity and proof of ownership of the property shall be promptly paid the sum accumulated for his benefit in the escrow account...."

\* \* \* \* \* \*

E. One (1) year after the date of the pooling order, the holder shall submit the report of funds that have been held in escrow, and shall transmit to the Corporation Commission the funds that have been so held...." (Emphasis added.)

The terms of 52 O.S.1991 § 553 provide in pertinent part:
"There is hereby created in the State Treasury the "Mineral Owner's Fund" the principal of which shall constitute a trust fund for persons claiming any interest in monies delivered to this state under this act...."

The terms of 52 O.S.1991 § 556 are:
"The State Treasurer shall retain custody of the Mineral Owner's Fund and annually on a date established by regulation shall transfer to the Unclaimed Property Fund those monies which have been in escrow accounts and the Mineral Owner's Fund seven (7) years or more after the date of pooling. After that time, such monies shall be subject to the Uniform Unclaimed Property Act (1981), Sections 651 et seq. of Title 60 of the Oklahoma Statutes."

The terms of 52 O.S.1991 § 558 provide in pertinent part:
"A. The Corporation Commission and the Tax Commission are to establish, administer and enforce rules and regulations and shall establish procedures for the full coordinated implementation of this act...."

**27.** For the text of 52 O.S.1991 § 556, *see supra* note 26.

**28.** 60 O.S.1981 §§ 651 et seq. The title of the Act was recently changed to "Uniform Unclaimed Property Act (1981)." 60 O.S.1991 § 686 (Okl.Sess.L.1991, Ch. 331, § 44, eff. Sept. 1, 1991).

*American Petrofina Co. of Texas v. Nance* [29] a U.S. district court held that the Uniform Act [30] "observes" the *Texas* guidelines for determining which state could escheat or take custody of unclaimed intangible property. We agree.

In 1984 the legislature amended the Uniform Act by adding §§ 658.2 through 658.8 [1984 Act].[31] These statutes specifically deal with the custodial taking of monies owed to unknown mineral interest owners. In *American Petrofina* [32] the court also construed the 1984 Act, holding that it does not on its face strictly follow the *Texas* guidelines. Because of this conflict the court concluded that the 1984 Act is preempted by *Texas*'s pronouncement of federal common law. We are not persuaded by this view. In *American Petrofina* the court did not construe the 1984 Act in conjunction with both the UPMA and the Uniform Act.

▮▮▮ Unless legislative intent would be violated, these three acts must be construed together to effectuate the purpose of providing for the custodial taking of unclaimed intangible property in a constitutional manner.[33] When amending a statute the legislature is presumed familiar with the extant judicial construction then in force.[34] Similarly, it can be presumed that when enacting a statute the legislature is familiar with the U.S. Supreme Court jurisprudence affecting that enactment.

▮▮▮ The legislature's failure to include the *Texas* guidelines in the UPMA is not fatal to its validity. *Texas* was decided in 1965. Its effect on the custodial taking of intangible property was well established by 1983, when the UPMA was passed, and in 1984, when the Uniform Act was amended to include custodial taking of monies owed to unknown mineral interest owners. The legislature presumably considered *Texas'* impact on the statutory scheme when drafting these acts and intended to conform them to the *Texas* guidelines—that is, it intended to allow Oklahoma to seize unclaimed monies belonging to (a) owners of forced pooled oil and gas interests with a

---

**29.** 697 F.Supp. 1183, 1188 (W.D.Okl.1986), *aff'd.,* 859 F.2d 840, 841 (10th Cir.1988).

**30.** The court in *American Petrofina, supra* note 29, reached this conclusion by construing the terms of 60 O.S.1981 § 659 which provided:

"Unless otherwise provided, *intangible personal property is subject to a presumption of abandonment* under this act if the appropriate conditions leading to a presumption of abandonment, described in Sections 2 through 8 of this act, are met, and *if:*

(a) *The last known address of the owner appearing on the records of the holder is in this state,* whether or not the holder:

(1) is domiciled in this state or is engaged in or transacts business in this state, or

(2) if a court, public corporation, public authority, or public officer, is a court, public corporation, public authority, or public officer of this state or a political subdivision thereof; or,

(b) No address of the owner appears on the records of the holder, *and the holder is:*

(1) *domiciled in this state,* or

(2) a court of this state, or

(3) a federal court within this state, or

(4) a public corporation, a public authority, or public officer of this state or a political subdivision thereof; or,

(c)(1) *The last-known address of the owner appearing on the records of the holder is in another state,* and

(2) *such other state makes no provision in its laws for the escheat or taking custody of such property,* and

(3) the *holder is:*

(A) *domiciled in this state,* or

(B) a court of this state, or

(C) a federal court within this state, or

(D) a public corporation, public authority, or public officer of this state or a political subdivision thereof." (Emphasis added.)

This section was amended during the 1991 session (Okl.Sess.1991, Ch. 331 § 19, eff. Sept. 1, 1991) to more clearly reflect the *Texas* guidelines for the escheat or custodial taking of all abandoned intangible property.

**31.** The Oklahoma legislature repealed the 1984 Act in 1991 (Okl.Sess.L.1991, Ch. 331, § 64).

**32.** Supra note 29.

**33.** Where possible, relevant portions of a statute and related enactments will be considered together to give force and effect to all of them. *Ledbetter v. Alcoholic Bev. Laws Enforcement, supra* note 20 at 179; *Texas City Irrigation v. Cities Service Oil Co., supra* note 24 at 51; *AMF Tubescope Company v. Hatchel,* Okl., 547 P.2d 374, 379 (1976).

**34.** *Huff v. State,* Okl., 764 P.2d 183, 185 (1988); *Lekan v. P & L Fire Protection Co., supra* note 20 at 1292; *Garrison v. State,* Okl., 420 P.2d 474, 477 (1966).

last known address in Oklahoma, (b) owners with no known address where the holder is domiciled [35] in Oklahoma, or (c) owners whose last known address is in a state with no custodial taking or escheat provisions and the holder's domicile is Oklahoma. Section 556 of the UPMA must be interpreted as allowing these monies to be subject to the provisions of both the Uniform Act and the 1984 Act. Measured by this construction, the federal common-law jurisprudence of *Texas* is not explicitly violated. *Obedience can be given to its commands without contravening any norms of the state statute under construction.*[36]

Where there are two possible interpretations of a statute, only one of which would render the statute unconstitutional, the court should adopt the construction which upholds the statute.[37] TXO presses on us a construction of the UPMA that would render the Act unconstitutional. We adopt today a construction ensuring the Act's constitutionality.

## III

UNCLAIMED PROCEEDS FROM FORCED POOLED MINERAL INTERESTS ARE SUBJECT TO THE STATE'S CUSTODIAL TAKING LAWS UNTIL CLAIMED BY A STATE WHICH HAS A SUPERIOR RIGHT TO THE PROCEEDS

Our declaration of the UPMA's constitutionality under the mandatory guidelines of *Texas* does not answer the ultimate question for decision here—whether the funds in controversy are subject to the State's temporary custodial reach until another state comes forward with proof that it has a prior right to custody or of escheat.

In *Texas* the Court was not confronted with, nor did it decide, the rights to custody of abandoned property *as between a private holder and a State.* The *Texas* guidelines establish priority among multiple states attempting to escheat or take custody of the same property. They are binding only where there are multiple states with claims to the same property. Nothing in *Texas* prohibits a state from claiming temporary custody of unclaimed property until some other state comes forward with proof that it has a superior right to it.[38]

The UPMA and Uniform Act are not escheat statutes.[39] They are "custodial taking laws" which make the State custodian of proceeds from forced pooled mineral interests whose owners are unknown or cannot be located, subject to the claims of those who prove ownership or a prior right to possession.[40] These proceeds are ulti-

**35.** Under 1991 amendments to the Uniform Act, the term "'[d]omicile' means the state of incorporation of a corporation and the state of the principal place of business of an unincorporated person." 60 O.S.1991 § 651(e) (Okl.Sess.L. 1991, Ch. 331, § 1, eff. Sept. 1, 1991).

**36.** This Court is construing the Act narrowly in order to make it conform to federal law articulated in *Texas v. New Jersey, supra* note 3. We have previously construed a statute broadly so as to conform to federal law. *See B.K. Sweeney Co. v. Colorado Interstate Gas Co.,* Okl., 429 P.2d 759 (1967).

**37.** *State v. Oklahoma State Board for Property,* Okl., 731 P.2d 394, 398–99 (1986) (the reviewing court is bound to accept an interpretation that avoids constitutional doubt); *see also, Gilbert Central Corporation v. State,* Okl., 716 P.2d 654, 658 (1986); *Ricks Exploration v. Oklahoma Water Resources Board,* Okl., 695 P.2d 498, 504 (1984); *Oklahoma State Election Board v. Coats,* Okl., 610 P.2d 776, 780 (1980).

**38.** *See in this connection Riggs Nat. Bank v. District of Columbia,* 581 A.2d 1229, 1245 (D.C.App.1990); *State v. Chubb Corp.,* 239 N.J.Super. 257, 570 A.2d 1313, 1315 (1989); *O'Connor v. Sperry & Hutchinson Co.,* 32 Pa. Cmwlth. 599, 379 A.2d 1378, 1381 (1977); *State v. Liquidating Trustees of Republic Petro. Co.,* 510 S.W.2d 311, 314–315 (Tex.1974).

**39.** In *Texas, supra* note 3, the Court defines "escheat" as "a procedure with ancient origins whereby a sovereign may acquire title to abandoned property if after a number of years no rightful owner appears." *Id.* 379 U.S. at 675, 85 S.Ct. at 627, 13 L.Ed.2d at 598. Generally, the disposition of abandoned and unclaimed property is accomplished by escheat to a state or custodial taking by a state. Oklahoma may be characterized as a "custodial taking" state.

**40.** Section 552 of the UPMA, *supra* note 26, requires holders to establish and place proceeds from pooled mineral interests in escrow accounts *for the benefit of unknown or unlocated owners* and to submit the funds held in escrow to the Corporation Commission within one year after the date of the pooling order. The Corpo-

mately placed in the Unclaimed Property Fund in the state treasury in trust for the rightful owner. By taking temporary custody of the unclaimed proceeds from a private holder, Oklahoma does not divest any state with a constitutional priority claim of custody or title to the funds. The public policy supporting custodial taking by a State is superior to any claim that a private holder may assert to any unclaimed proceeds. Under today's construction proceeds from forced pooled mineral interests are brought into the custody of the State Treasurer where mechanisms are available through the Uniform Act (a) for locating the rightful owners [41] and allowing them to assert their claim administratively [42] as well as in our courts,[43] and (b) for exchanging information with other states needed to enable another state to audit or otherwise determine the unclaimed proceeds which it may be entitled to subject to a claim of custody.[44]

## CONCLUSION

■ In keeping with the legislative intent of the UPMA, we hold that § 556 contemplates the transfer to the Unclaimed Property Fund [45] of those funds which are being held for: 1) unknown pooled owners whose last known address is in the State of Oklahoma; 2) unknown pooled owners with no known address whose holder is domiciled in Oklahoma; and 3) unknown pooled owners whose last known address is in a state having no custodial taking or escheat provisions and the holder of the affected property interest is domiciled in Oklahoma. As for any other proceeds in the hands of a holder subject to Oklahoma jurisdiction which are being held for unknown pooled owners which do not fall within these categories, we hold that Oklahoma may take temporary custody of those funds until they are claimed by a state that establishes a superior right to custody of or to escheat the funds. Under today's construction, Oklahoma cannot maintain the status of rightful claimant to the funds in contest here as against those who may qualify under the *Texas* priority regime. We need not and do not today reach for decision the ultimate issue to arise from this pronouncement—that of who may constitutionally claim the funds in contest here. The case before us is not properly postured for that determination.[46]

Certiorari previously granted; the opinion of the Court of Appeals is vacated, the Commission's order refusing to grant the exception from compliance is reinstated and the cause remanded for further proceedings not inconsistent with this pronouncement.

HODGES, V.C.J., and SIMMS, HARGRAVE, ALMA WILSON and KAUGER, JJ., concur.

ration Commission must then transmit the funds to the State Treasurer who *holds the funds in trust* for the mineral owners in the Mineral Owner's Fund. 52 O.S.1991 §§ 553 (*supra* note 26), 554. Section 555 of the UPMA provides for investment of the funds and annual apportionment of the interest earned. After the proceeds have been in escrow accounts and the Mineral Owner's Fund seven years or more after the date of pooling, the Corporation Commission must transfer them to the Unclaimed Property Fund at which time they become subject to the Uniform Act. 52 O.S.1991 § 556, *supra* note 26. Section 668 of the Uniform Act, *infra* note 45, creates the Unclaimed Property Fund; § 669 (as last amended by Okl.Sess.L. 1991, Ch. 331, § 27) provides for the Tax Commission's control and management of the Unclaimed Property Fund.

**41.** *See* 60 O.S.1991 § 662.

**42.** 60 O.S.1991 §§ 674, 675.

**43.** 60 O.S.1991 § 676.

**44.** *See* 60 O.S.1991 § 683.1.

**45.** The terms of 60 O.S.1981 § 668 provided in pertinent part:

"There is hereby created in the State Treasury the 'Unclaimed Property Fund,' the principal of which shall constitute a trust fund for persons claiming any interest in any property delivered to the State under this Act.... All funds received under this Act ... shall forthwith be deposited by the Oklahoma Tax Commission in the Unclaimed Property Fund...." The quoted portions were not changed by a subsequent amendment to the statute (Okl.Sess. L.1990, Ch. 102, § 1, operative July 1, 1990).

**46.** Both the Tax Commission (Uniform Disposition of Unclaimed Property Rules) and Corporation Commission (Escrow Rules) would be well advised to revisit their present rules to ensure that they conform with today's pronouncement.

SUMMERS, J., concurs in result.

LAVENDER, J., concurs in part and dissents in part.

DOOLIN, J., dissents.