Dear Employees Jackson,
¶ 0 This office has received your request for an Attorney General's Opinion in which you asked, in effect:
To what extent are the powers and duties of the EmployeesBenefits Council set forth in the Oklahoma State EmployeesBenefits Act subject to the direction and approval of theOklahoma Health Care Authority pursuant to 63 O.S.Supp. 1995, §5006[63-5006], and 74 O.S.Supp. 1995, § 1365[74-1365]?
¶ 1 The Employees Benefits Council, ("EBC") was created in 1992 as a division of the Office of Personnel Management to oversee the purchase of health care insurance, child care and other insurance benefits for State employees. This group of benefits is known as the flexible benefits plan (the "Plan"). 74 O.S.Supp.1995, §§ 1361-1372[74-1361-1372].
¶ 2 The purpose of EBC as set forth legislatively is in part:
 1. To recognize that the employee benefit needs of individual state employees differ . . .;
 2. To furnish state employees with choices among various employee benefits or cash compensation;
 3. To provide state employees and their dependents with basic group health insurance, basic group term life insurance, and basic long-term disability insurance;
 4. To provide state employees and their dependents with optional employee benefits . . .;
 5. To provide state employees with reimbursement for qualifying dependent care expenses . . .;
 6. To provide state employees with tax sheltered income deferment plans;
 7. To provide uniform benefit options for all state employees . . .;
 8. To manage the provision of health care benefits in a manner that allows long term control of costs;
 9. To provide for the coordination and design . . . of all employee benefits offered to state employees . . .;
 10. To enable the state to attract and retain qualified employees by providing employee benefits which are competitive with those provided private industry;
 11. To offer uniformity in those benefits that are offered to both state employees and those eligible for participation in the State and Education Employees Group Insurance Act . . .;
 12. To ensure compliance with the Health Maintenance Organization Act of 1973 . . .;
 13. To recognize and protect the state's investment in each employee by promoting and preserving good health and longevity among state employees;
 14. To recognize the service to the state by elected and appointed officials by extending to them the same benefits as are provided under the flexible benefits program to state employees; and
 15. To recognize long and faithful service, and to encourage employees to remain in state service until eligible for retirement by providing employee benefits.
74 O.S.Supp. 1995, § 1362[74-1362].
¶ 3 In order to carry out its responsibilities, the Oklahoma Legislature endowed EBC with a number of specific powers and duties with regard to the Plan. These powers and duties include the authority:
 1. To construe and interpret the plan, and decide all questions of [employee eligibility];
 2. To select those benefits which shall be made available to participants . . .;
 3. To retain or employ qualified agencies, persons or entities to design, develop, communicate, implement or administer the plan;
 4. To prescribe procedures [for] making elections and filing claims under the plan;
 5. To prepare and distribute information communicating and explaining the plan . . .;
 6. To receive from [State] employers and participants such information as shall be necessary for the proper administration of the plan . . .;
 7. To furnish [State] employers and participants such annual reports with respect to the administration of the plan . . .;
 8. To keep reports of benefit elections, claims and disbursements for claims under the plan;
9. To appoint an executive director . . .;
 10. . . . [T]o select and contract with federally qualified health maintenance organizations . . . for consideration by participants as an alternative to the health plans offered by the Board, and to transfer to the health maintenance organizations such funds as may be approved for a participant electing health maintenance organization alternative services;
 11. To require vendors . . . to provide such enrollment and claims data . . .;
 12. To purchase any insurance deemed necessary for providing benefits . . .;
 13. To communicate deferred compensation programs . . .;
 14. . . . [T]o assess and collect reasonable fees . . .;
 15. To accept, modify or reject elections under the plan . . .;
 16. To promulgate election and claims forms to be used by participants; and
 17. To take all steps deemed necessary to properly administer the plan. . . .
74 O.S. Supp. 1995, § 1365[74-1365](A).
¶ 4 In addition, the Legislature has provided:
 The general administration and responsibility for the proper design, selection or operation of the benefits offered under the plan and for making effective the provisions of this act are hereby vested in the Council. . . .
74 O.S.Supp. 1995, § 1364[74-1364](F).
¶ 5 The Oklahoma Health Care Authority ("the Authority") was created in 1993 primarily to provide fiscal oversight to allow the State to "develop effective and efficient health care delivery systems and strategies for procuring health care services. . . ." 63 O.S.Supp. 1995, § 5003[63-5003](A). The Legislature stated the purpose of the Authority is to:
 1. Purchase state and education employees' health care benefits and Medicaid benefits;
 2. Study all state-purchased and state subsidized health care, alternative health care delivery systems and strategies for the procurement of health care services in order to maximize cost containment in these programs while ensuring access to quality health care; and
 3. Make recommendations aimed at minimizing the financial burden which health care poses for the state, its employees and its charges, while at the same time allowing the state to provide the most comprehensive health care possible.
63 O.S.Supp. 1995, § 5003[63-5003](B).
¶ 6 The Oklahoma Legislature has provided that the Authority has the specific duty to "analyze the state-purchased and state-subsidized health care programs and explore options for cost-containment and delivery alternatives for those programs" within set parameters. 63 O.S.Supp. 1995, § 5010[63-5010]. Further, in regard to state-purchased health care benefits, the Authority has the duty to:
 [D]evelop state and education employee health care benefit plans as provided by this section. In developing these plans, the Authority shall consider the following elements:
 1. Methods of maximizing cost containment while ensuring access to quality health care;
 2. Development of provider arrangements that encourage cost containment and ensure access to quality care, including, but not limited to, prepaid delivery systems and prospective payment methods;
3. Utilization review procedures . . .; and
4. Effective coordination of health care benefits.
63 O.S.Supp. 1995, § 5011[63-5011](B).
¶ 7 Although originally placed under the Office of Personnel Management, in 1994 EBC was transferred to the Authority:
 On and after July 1, 1994, the Employees Benefits Council shall be transferred to the Oklahoma Health Care Authority. The powers, duties and responsibilities of the Council that relate to the purchase of health care benefits shall be made under the direction and with the approval of the Oklahoma Health Care Authority in accordance with the plan adopted pursuant to [ 63 O.S.Supp. 1995, § 5006[63-5006]].
74 O.S.Supp. 1995, § 1364[74-1364](A) (emphasis added). See also 63O.S.Supp. 1995, § 5011[63-5011].
¶ 8 Your question asks for an interpretation of the above purposes and duties of EBC and the Authority in light of the transfer of EBC to the Authority.
¶ 9 In order to answer your question, we apply basic rules of statutory construction. The primary goal of statutory construction is to ascertain legislative intent from the whole act in light of its general purpose and objective. TXOProduction Corp. v. Oklahoma Corporation Commission,829 P.2d 964, 968-969 (Okla. 1992). Words in a statute must be understood in their ordinary meaning, except when a contrary intent plainly appears or when otherwise defined by the Legislature. 25 O.S.1991, § 1[25-1]. "Statutes must be interpreted in a manner which renders every word and sentence operative, rather than in a manner which would render a specific provision nugatory." TWA v.McKinney, 749 P.2d 108, 110 (Okla. 1988).
¶ 10 The plain language of the transfer statute, 74 O.S.Supp.1995, § 1364[74-1364], reflects a legislative intent that the Authority has the power to direct and approve actions of EBC which "relate" to the purchase of health care benefits for State employees. However, the word "relate" is not defined in Section 1364 and must be construed. Therefore its ordinary meaning is applicable.25 O.S. 1991, § 1[25-1].
¶ 11 The dictionary definition of "relate" is "to show or establish a logical or causal connection between . . . [to] have reference." Webster's Third New International Dictionary 1916 (1981).
¶ 12 Also important in the interpretation of the transfer statute is the fact that in transferring EBC in part to the Authority, none of the specific powers of EBC were repealed by the Legislature. 74 O.S.Supp. 1995, § 1365[74-1365]. However, a plain reading of the enumerated powers of EBC shows that two of the specific powers are logically connected to the purchase of health care benefits:
 10. [T]o select and contract with federally qualified health maintenance organizations . . . for consideration by participants as an alternative to the health plans offered by the Board, and to transfer to the health maintenance organizations such funds as may be approved for a participant electing health maintenance organization alternative services; [and]
. . . .
 12. To purchase any insurance deemed necessary for providing benefits. . . .
74 O.S.Supp. 1995, § 1365[74-1365](A).
¶ 13 These powers clearly, by a plain reading of 74 O.S.Supp.1995, § 1364[74-1364], relate to the purchase of health care benefits. Other enumerated powers and duties of EBC can be implemented by EBC solely without any adverse impact upon the powers of the Authority under Section 1364.
¶ 14 Therefore, we read the phrase "relate to the purchase of health care benefits" in 74 O.S.Supp. 1995, § 1364[74-1364], so as to give effect to the enumerated powers of both agencies and to prevent any powers from being rendered nugatory. This results in EBC having responsibility to design and develop proposed plans to be offered to State employees and to do those other things within the powers of EBC, as set forth in Section 1364, such as determine eligibility, distribute information or retain or employ qualified persons. The Authority has oversight of the proposed plans to ensure the interests of the State are protected and the finances of the State are managed.
¶ 15 It is, therefore, the official Opinion of the Attorney General that:
The powers and duties of the Employees Benefits Council are subject to the direction and approval of the Oklahoma Health Care Authority pertaining only to matters which are logically connected to the purchase of health care benefits for State employees, pursuant to 63 O.S.Supp. 1995, § 5011[63-5011], and 74O.S.Supp. 1995, § 1364(A) and (B).
As stated in 74 O.S.Supp. 1995, § 1365[74-1365](A) these include the powers:
1. To select and contract with federally qualified health maintenance organizations for consideration by participants as an alternative to the health plans offered by the Board and transfer to the health maintenance organizations such funds as may be approved for a participant electing health maintenance organization alternative services; and
2. To purchase insurance necessary for providing benefits.
As enumerated in 74 O.S.Supp. 1995, § 1365[74-1365](A) the Employees Benefits Council has the sole power:
1. To construe and interpret the Plan and decide questions of employee eligibility;
2. To select health care benefits to be made available;
3. To select benefits other than health care benefits to be made available;
4. To retain or employ qualified agencies, persons or entities;
5. To prescribe procedures for making elections and filing claims under the Plan;
6. To prepare and distribute information communicating and explaining the Plan;
7. To receive from State employers and employees information as shall be necessary for the proper administration of the Plan;
8. To furnish State employers and employees with annual reports with respect to the administration of the Plan;
9. To keep reports of benefit elections, claims and disbursements for claims under the Plan;
10. To appoint an executive director;
11. To require vendors to provide enrollment claims data;
12. To communicate deferred compensation programs;
13. To assess and collect reasonable fees;
14. To accept, modify, or reject elections under the Plan;
15. To promulgate election and claims forms used by participants; and
16. To take all steps deemed necessary to administer the Plan properly.
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
JAMES ROBERT JOHNSON ASSISTANT ATTORNEY GENERAL