Dear Executive Director Holt,
¶ 0 This office has received your request for an Attorney General Opinion in which you asked, in effect, the following question:
Does the Medical Technology and Research Authority of Oklahomaperform essentially a local function so that the Authority is notrequired to promulgate its rules pursuant to the OklahomaAdministrative Procedures Act, 75 O.S. 1991 and Supp. 1995, §§250-323?
¶ 1 In order to answer your question, it is necessary to review portions of the Administrative Procedures Act, 75 O.S. 1991 andSupp. 1995, §§ 250-323 (the "APA") and the statutes which created the Medical Technology and Research Authority of Oklahoma (the "Authority").
¶ 2 A primary purpose of the APA is to create a framework under which agencies of the State of Oklahoma promulgate rules for the operations and procedures of those agencies. Id. An "agency," for purposes of the APA, is defined as:
 [A]ny constitutionally or statutorily created state board, bureau, commission, department, authority, public trust in which the state is a beneficiary, or interstate commission, except:
 a. the Legislature or any branch, committee or officer thereof, and
b. the courts[.]
75 O.S.Supp. 1995, § 250.3[75-250.3](1).
¶ 3 A "rule" is defined as:
 [A]ny agency statement or group of related statements of general applicability and future effect that implements, interprets or prescribes law or policy, or describes the procedure or practice requirements of the agency.
75 O.S.Supp. 1995, § 250.3[75-250.3](2).
¶ 4 This section includes several exceptions to the definition of a rule which have no application to your question.
¶ 5 In general, agencies of the State are required to promulgate their rules in accordance with the provisions of Article I of the APA, unless specifically authorized otherwise.75 O.S.Supp. 1995, § 250.4[75-250.4](A)(1). However, the APA specifies certain exceptions to the general requirement:
 This Act shall not apply to municipalities, counties, school districts, and other agencies of local government; nor to specialized agencies, authorities, and entities created by the legislature, performing essentially local functions,
such as, but not limited to, Urban Renewal Authorities, Port Authorities, City and City-County Planning Commissions, Conservancy and other Districts, and public trusts having a municipality or county, or agency thereof, as beneficiary; but this Act shall apply to public trusts having the State, or any department or agency thereof, as beneficiary.[1]
75 O.S. 1991, § 250.5[75-250.5] (emphasis added).
¶ 6 Your question, then, is whether the Authority performs an essentially local function as provided by Section 250.5.
¶ 7 The Authority was created by act of the Oklahoma Legislature in 1990. The Authority has the power by statute:
 5. To construct, maintain, repair and operate improvement projects, and further to provide operational services to service recipients at such locations within the district as shall be determined by the Authority to be feasible and economically sound, and to enter into contracts with service recipients for operational services. . . .;
 6. To issue improvement revenue bonds of the Authority, payable solely from revenues, including the revenues accruing to the trust fund created by this act, for the purpose of paying all or any part of the cost of any one or more improvement projects;
 7. To fix and revise from time to time user charges for the use of improvements and improvement projects . . .;
. . . .
 10. To acquire within the district in the name of the Authority by purchase or otherwise on such terms and conditions and in such manner as it may deem proper, or by exercise of the right of condemnation in the manner hereinafter provided, such public or private lands, including public parks, playgrounds, or reservations, or parts thereof or rights therein, rights-of-way, property rights, easements, and interests, as it may deem necessary for carrying out the provisions of this act; [and,]
. . . .
 13. To regulate and control all vehicular parking within the district[.]
74 O.S. 1991, § 7054[74-7054].
¶ 8 The Authority executes its powers exclusively within the "district" set forth by statute and which is defined as limited to the immediate area around the University Hospital in Oklahoma City, with a secondary district generally extending 1500 feet beyond the district. 74 O.S. 1991, § 7053[74-7053].
¶ 9 A "project" or "improvement project," for the purposes of Sections 7054 through 7067 is defined to mean:
 [A]ny facilities constructed or improvements made under the provisions of this act by the Authority, and shall embrace all buildings, structures, landscaping, infrastructure, utilities, roadways, parking structures, parking lots, sidewalks, personal property and fixtures, equipment and machinery, and other improvements which the Authority may deem necessary for the operation of such improvement projects or in connection with operational services provided by the Authority, together with all property, rights, easements and interests which may be acquired by the Authority for the construction or the operation of such[.]
74 O.S. 1991, § 7053[74-7053](2).
¶ 10 Basic rules of statutory construction are useful in order to determine the affect of rule promulgation requirements on the Authority. "The primary goal of statutory construction is to determine [the] legislative intent" of a statute "in light of its general purpose and object." TXO Production v. OklahomaCorporation Commission, 829 P.2d 964, 968-69 (Okla. 1992). Words in a statute must be understood in their ordinary meaning, except when a contrary intent plainly appears or when otherwise defined by the Legislature. 25 O.S. 1991, § 1[25-1]. Intent must be ascertained from the entire act in light of its purpose. MidwestCity v. Harris, 561 P.2d 1357, 1358 (Okla. 1977). Interpretation must be done in such a way as to make every word and sentence operative rather than render a statutory provision nugatory. TWAv. McKinley, 749 P.2d 108, 110 (Okla. 1988).
¶ 11 The expressed intent of the Legislature in Section 250.5 of the APA is that the APA does not apply to "specialized agencies" which perform "essentially local functions." Section 250.5 identifies several types of "specialized agencies," such as "Urban Renewal Authorities" and "Port Authorities." Although the Authority is not identified by name in Section 250.5, it is evident that all of the duties and powers of the Authority relate to the Authority's functions within the "district" and "secondary district" defined in 74 O.S. 1991, § 7053[74-7053] for the purposes of making improvements to the district around the University Hospital. 74 O.S. 1991, §§ 7050-7067[74-7050-7067].[2]
¶ 12 Neither "local" nor "specialized" is defined in the APA. Therefore, it is necessary to use these words in their ordinary sense. The dictionary defines "specialize" in part as, "focus on a special area of knowledge or activity." Webster's Third New International Dictionary 2186 (1981). Sections 7053 through 7067 of Title 74 reflect that the Authority's duties and powers are focused on specific activities within a specific area; we determine from this that the Authority is a specialized agency.[3]
¶ 13 The dictionary defines "local" in part as, "characterized by or relating to position in space . . . [of or relating] to a particular place." Webster's Third New International Dictionary 1327 (1981). The Authority functions exclusively within the district around the University Hospital in Oklahoma City as specified in 74 O.S. 1991, § 7053[74-7053].
¶ 14 From this perspective, the stated exception in Section 250.5 of the APA applies fairly to the Authority. To conclude otherwise would render nugatory the expressed intent of the Legislature to allow agencies performing essentially local functions relief from promulgation requirements of the APA.
¶ 15 Of course, this Opinion is based on the current scope of the Authority' powers. In the event the duties and powers of the Authority were expanded, this Opinion would no longer be applicable.
¶ 16 It is, therefore, the official Opinion of the AttorneyGeneral that:
1. The Medical Technology and Research Authority is limited inits powers to a specific district within Oklahoma City, 74 O.S.1991, § 7053[74-7053], and to carry out enumerated functions within thatdistrict, 74 O.S. 1991, §§ 7054-7067[74-7054-7067], so as to make theAuthority a "specialized agency" performing essentially localfunctions.
2. As such, the Medical Technology and Research Authority ofOklahoma is not required to promulgate its rules pursuant to theOklahoma Administrative Procedures Act, 75 O.S. 1991 and Supp.1995, §§ 250-323.
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
JAMES ROBERT JOHNSON ASSISTANT ATTORNEY GENERAL
[1] Although the Authority has many of the attributes of a public trust, especially the implementation of a public function or objective (see 60 O.S.Supp. 1995, § 176-§ 180.4), it was, to the contrary, created specifically as an "agency of the state." 74 O.S.Supp. 1995, § 7052[74-7052](A). Therefore, the provisions of 75 O.S. 1991, § 250.5[75-250.5], regarding public trusts with the state as beneficiary do not apply to the Authority.
[2] We note that 74 O.S. 1991, § 7050[74-7050], makes reference to the Authority's powers to perform certain acts "within the State of Oklahoma," without specific regard to the district or secondary district. This does not necessarily grant the Authority statewide powers. The entire act, when read as a whole in light of MidwestCity v. Harris, supra, and the defined district specified in Section 7053, reflects that the Authority's powers are limited to the more specific powers set forth in Sections 7054 through 7067 of Title 74.
[3] For other opinions of a similar nature, see A.G. Opins. 74-149 and 80-51.